848 So.2d 393 (2003)
Michael FARLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-1453.
District Court of Appeal of Florida, Fourth District.
June 25, 2003.
*394 Russell L. Cormican of Kent and Cormican, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Following the trial court's denial of Michael Farley's ("Farley") motions to dismiss and suppress, Farley pled nolo contendere to three counts of sexual performance by a child in violation of Florida Statutes section 827.071(5) (1999). He reserved his right to appeal the denial of the motion to suppress as well as the denial of the motion to dismiss on the basis of subjective entrapment as a matter of law and substantive due process/objective entrapment. We need only address the motion to dismiss in this appeal.
Farley's case was precipitated by an unrelated investigation in Texas. In 2000, a husband and wife were arrested in Dallas on child pornography offenses stemming from their sexually-oriented Internet business. During the related investigation, a database including a list of names, addresses, e-mail addresses, and credit card information was uncovered. There was no evidence of how or why the list was created and no evidence that anyone appearing on the list ever purchased child pornography from the business. As even the prosecution admitted, the list could have been stolen or purchased, or it could have been entirely innocent.
Texas law enforcement compiled a list of Florida names and addresses from the database and forwarded it to the Broward County Sheriff's Office LEACH Taskforce ("LEACH"). Farley's name, address, e-mail address, credit card number, and other personal information was included on this list. LEACH cross-checked the names on the list with a list of registered sex offenders and Farley was not listed. LEACH conducted no further inquiry into Farley's background.
LEACH decided to conduct a reverse sting targeting individuals on the list compiled by the Texas authorities. LEACH sent a spam e-mail to every address on the list with an advertisement in excess of 300 words soliciting patrons for a fictitious business, "providers4you.com." The e-mail indicated the business could assist adult customers in obtaining taboo, over-the-edge, extreme, intense, and hard-to-find, sexual material. The e-mail also contained repeated assurances that communications and transactions with the business would be protected from governmental interference.
Farley received the spam e-mail; he had no prior contact with LEACH, had made no request for the e-mail, and only received the e-mail because he was on the list provided by Texas law enforcement. The e-mail suggested that Farley should connect to the business's website, which included several web pages. Some of the assertions made on these pages included *395 that the business does not offer "normal" adult materials, that no request is too bizarre or taboo, and additional assurances of protection from governmental interference. In fact, upon reviewing the web pages, one can count no less than ten instances in which protection from governmental interference is either expressly promised or strongly intimated.
The website provided a service for customers to submit information about themselves and their preferences for matching with suppliers. Farley inputted a request for specific pictures of teenage boys. LEACH Detective Bob DeYoung ("DeYoung") received Farley's request and sent a reply e-mail indicating the request had been forwarded to supplier Stephen Hall ("Hall"), DeYoung's fictitious alter ego. Hall then sent Farley an e-mail requesting more specific details regarding Farley's preferences.
An escalating e-mail exchange ensued between Farley and Hall. Farley provided more details about his preferences in two e-mails. Hall asked Farley to respond with even more specificity. Farley provided more information. Only after this inquisition, in which Farley was asked to provide increasingly explicit details about his desires, was he e-mailed an order form. The form listed products featuring underage boys, all of which were invented by Hall/DeYoung.
Farley ordered three VHS cassettes to be paid C.O.D. DeYoung and LEACH arranged for a controlled delivery of the order to Farley's residence. LEACH prepared three VHS cassettes by dubbing previously seized materials and labeling the tapes with the titles requested by Farley. A postal inspector acting as a letter carrier delivered the tapes to Farley. Farley accepted the tapes and paid cash. Twenty minutes later, he was arrested.
With these facts in mind, we turn to Farley's assertion that the trial court erred in denying his motion to dismiss on the basis of subjective entrapment as a matter of law, and substantive due process/objective entrapment. The defense of subjective entrapment is statutorily defined in Florida. See § 777.201, Fla. Stat. (2002). The test for subjective entrapment in Florida was developed in Munoz v. State, 629 So.2d 90 (Fla.1993). Three questions must be answered under the test to establish a subjective entrapment defense: (1) whether a government agent induced the defendant to commit the crime charged; (2) whether the defendant was predisposed to commit the crime charged; and (3) whether the entrapment defense should be evaluated by the jury. Id. at 99-100.
Turning to the first question, inducement is defined as:
[A]ny government conduct creating a substantial risk that an otherwise lawabiding citizen would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.
United States v. Davis, 36 F.3d 1424, 1430 (9th Cir.1994). In Beattie v. State, 636 So.2d 744 (Fla. 2d DCA 1993), inducement was found based on events stemming from a newspaper advertisement. Id. at 745. U.S. Customs placed an advertisement for materials featuring "miniature & young love" in a free newspaper. Id. Beattie responded to the advertisement and expressed interest in some movies. Id. An exchange of ten letters ensued, only after which did Customs arrange a meeting with Beattie to sell him a pornographic video. Id.
In the present case, Farley was subjected to various acts of inducement by *396 LEACH. The assurances of protection from government scrutiny could certainly be labeled fraudulent representations when made by government. The similarities to Beattie are striking. Farley was also confronted with an advertisement disseminated by the government, except he, unlike Beattie, was not willingly exposed to the advertisement. Farley indicated interest in the products offered by visiting a website and declaring his preferences, and like Beattie, he was then confronted with an exchange of correspondence. Only after that exchange was Farley offered an order form, leading to his purchase and arrest.
The State maintains that this type of law enforcement conduct does not demonstrate the necessary progression from "innocent lure" to "frank offer" required for inducement and entrapment. See United States v. Gendron, 18 F.3d 955 (1st Cir.1993). However, the facts in Farley's case clearly refute this assertion. The progression began with a spam e-mail and escalated to the point where lurid personal details were elicited in eventual exchange for an order form. What began as a plan to possibly uncover an offender from the Texas list, became a concerted effort to lure Farley into committing a crime. Therefore, inducement is present in Farley's case, and the Munoz analysis may proceed to its second phase.
Addressing the second question, predisposition is defined as:
[W]hether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense.
Munoz, 629 So.2d at 99. Predisposition has been found to be absent where the defendant was not known for deviant behavior prior to the brush with law enforcement at issue. Beattie, 636 So.2d at 745. Predisposition is also not present when one has no prior criminal history related to the offense at issue. Nadeau v. State, 683 So.2d 504, 506 (Fla. 4th DCA 1995).
In the present case, there is no evidence that Farley was predisposed to possess child pornography. No evidence was adduced that Farley had ever purchased such pornography nor were any other pornographic materials found in his home. Additionally, Farley had never been arrested for anything in his life, let alone a child pornography offense.
The State contends the fact that Farley ordered the videos indicates that he had a predisposition to possess child pornography. However, this view overlooks even the common connotation of the word "pre disposition." The prefix pre-indicates that the disposition must exist before first contact with the government. See Jacobson v. United States, 503 U.S. 540, 548-549, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992) (citing United States v. Whoie, 925 F.2d 1481, 1483-1484 (1991)). In the present case, prior to receiving the spam e-mail from the government, there is no indication that Farley had any inclination to purchase and possess child pornography. Therefore, Farley was not predisposed to commit the crime and the Munoz analysis may proceed to its final stage.
When confronting the third question, we again turn to Beattie for instruction. Beattie satisfied his burden by establishing inducement and also establishing his lack of predisposition. Beattie, 636 So.2d at 746. The State was unable to present rebuttal evidence of predisposition, so it did not carry its burden on this element. Id. Because the facts and law at hand clearly established entrapment rather than crime, the court held it was error to deny Beattie's motion to dismiss. Id. In doing so, the court found it unnecessary to answer the final question of the Munoz test; *397 however, in essence, the court concluded that as a matter of law, entrapment existed, and therefore the jury had nothing to consider. Id.
In Farley's case, inducement and lack of predisposition were clear upon the face of the facts. The State presented no evidence of past deviant behavior or criminal activity on Farley's part. Therefore, entrapment rather than crime was at hand, and as a matter of law, the trial court should have granted Farley's motion to dismiss. After all:
When the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene.
Jacobson, 503 U.S. at 553, 112 S.Ct. 1535.
We now turn to the second issue to be discussed in this opinion, substantive due process/objective entrapment. The test for objective entrapment was eliminated by Florida's shift to statutory subjective entrapment, but the courts may still review entrapment objectively under the due process clause of the Florida Constitution. Munoz, 629 So.2d at 91. Farley contends that LEACH engaged in and propagated an illegal industry and targeted its efforts at Farley without any evidence of his prior involvement or interest in child pornography in violation of his due process rights.
There are several examples of law enforcement conduct that rises to the level of offending due process. In State v. Williams, 623 So.2d 462 (Fla.1993), the Florida Supreme Court held that law enforcement manufacture of crack cocaine for use in a reverse sting operation near a school violated due process. Id. at 463. The court found this conduct to be outrageous, partially because crack cocaine is addictive and deadly. Id. at 466. Additionally, in State v. Glosson, 462 So.2d 1082 (Fla.1985), the court found a contingent fee arrangement for the testimony of an informant a violation of due process, because it "seemed to manufacture, rather than detect, crime." Id. at 1084 (citing Williamson v. United States, 311 F.2d 441 (5th Cir.1962)).
Law enforcement conduct in Farley's case is very similar to that in the cited cases. LEACH manufactured copies of videos featuring child pornography. Although child pornography may not be deadly like crack cocaine, child pornography may encourage and memorialize traumatic sex crimes. Additionally, Farley was not involved in an existing criminal undertaking in need of detection by law enforcement; rather, LEACH sought to manufacture crime based on a list of names and addresses of unknown origin.
The State maintains that all similarities aside, law enforcement conduct in Farley's case simply does not rise to the level of offending due process. The State cites standards, such as the following from United States v. Limon-Casas, 96 F.3d 779 (5th Cir.1996), in support of this proposition:
We need only remind that at the least the conduct of the government must be outrageous and prejudicial to the ability of a defendant to receive a fair trial.
Id. at 783. However, Florida courts have repeatedly found that cases stemming from manufactured crime similar to that present in Farley's case do achieve the requisite level of outrageousness. For example, this Court wrote the following in the case of a loansharking sting:
Where the government supplies all of the instrumentalities of a crime, controls all of its aspects, and teaches the intended target how to commit the crime for purposes of arresting him, as the trial court found here, there is no crime at all without government involvement. No *398 legitimate objective of government is accomplished by prosecuting a crime so totally and completely orchestrated by the government. We conclude that this activity violates due process.
State v. Finno, 643 So.2d 1166, 1169 (Fla. 4th DCA 1994).
What cements Farley's case as one that violates due process, is not only the manufacture of crime, but the fact that such crime was manufactured under cover of a promise of protection from government interference. Thus, we conclude that the trial court erred by denying his motion to dismiss based on substantive due process/objective entrapment.
In conclusion, Farley established defenses of subjective entrapment as a matter of law and substantive due process/objective entrapment, and therefore, the trial court erred in denying Farley's motion to dismiss. As a result, we reverse Farley's conviction and sentence and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
POLEN, C.J., GUNTHER and TAYLOR, JJ., concur.