896 So.2d 900 (2005)
STATE of Florida, Appellant,
v.
Julio BLANCO, Appellee.
No. 4D03-113.
District Court of Appeal of Florida, Fourth District.
March 2, 2005.
Charles J. Crist, Jr., Attorney General, Tallahassee and Frank J. Ingrassia, Douglas J. Glaid and Andrea D. England, Assistant Attorneys General, Fort Lauderdale, for appellant.
Kevin J. Kulik, Fort Lauderdale, for appellee.

ON MOTION FOR REHEARING EN BANC
MAY, J.
We grant the State's motion for rehearing en banc, withdraw our previous opinion, and substitute the following opinion in its place.
The State appeals an order dismissing charges against the defendant based upon entrapment. We reverse the order of dismissal and remand the case to the trial court for reinstatement of the charges.
*901 Law enforcement received information that drugs were being sold at a bar without any detailed information. Undercover officers went to the bar to attempt to find the dealers. Upon arrival, one of the officers approached the bar and sat next to the defendant. A conversation ensued. The officer indicated that he liked to "party," and explained to the defendant that he meant the use of cocaine.
The defendant left the bar at some point and went to the restroom. Upon his return, he told the officer no one was selling cocaine, but he found someone selling "Tina" or crystal meth for $60. The officer gave money to the defendant, who returned with the drugs. The officer bought the defendant a beer and talked for awhile. The officer exchanged numbers with the defendant and called him during the following days. The defendant was arrested two weeks later.
The defendant moved to dismiss the case on the grounds of entrapment. The court heard testimony from the defendant and the officer. They both testified to a conversation taking place and the use of the term "party." However, the defendant's interpretation of the word, and who said what, differed from that of the officer.
The trial court granted the defendant's motion to dismiss. The court explained:
I have to kind of disagree with [the State].... [T]his particular defendant was not a target of an investigation. He had not been previously noted as someone who dealt in drugs and that they were targeting him. This officer walks into knowingly  knowing it's a gay bar  and, as he testified, he approached this man who was sitting alone. He was the one that began the conversation. If it had been a woman sitting there I think she would have felt the same way. This was a man who was interested in her or him. The manner of procedure here and the talk that resulted would certainly seem to me objectionable, denied this man of his due process rights. And I am going to grant the motion to dismiss.
It is from this ruling that the State appeals.
Unlike subjective entrapment, which focuses on the issues of inducement and the defendant's predisposition, an objective analysis of entrapment on due process grounds focuses on the conduct of law enforcement. Munoz v. State, 629 So.2d 90 (Fla.1993).[1] The type of conduct held to violate due process is that which so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction. See, e.g., State v. Glosson, 462 So.2d 1082 (Fla.1985) (law enforcement entering into a contingency contract with informants to obtain convictions); Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985) (law enforcement officer appearing inebriated and hanging money from his pocket in high crime area); State v. Williams, 623 So.2d 462 (Fla.1993) (illegal manufacture of crack cocaine by law enforcement officials for use in reverse-sting operation); Soohoo v. State, 737 So.2d 1108 (Fla. 4th DCA 1999) (undercover agent's consignment arrangement for sale of drugs). When government conduct violates a defendant's due process rights, the remedy is dismissal. See Munoz, 629 So.2d 90.
*902 In this case, the defendant's version of the facts differed from that of the officer. But, even assuming the facts in the light most favorable to the defendant, law enforcement's conduct was not so outrageous that dismissal was warranted.
The trial court failed to limit its consideration to the conduct of law enforcement. Rather, it focused its attention on the effect of the officer's conduct on the defendant, the defendant's subjective perception of the situation, and his apparent lack of predisposition to commit the offense. Respectfully, those factors are irrelevant to a ruling when it is objectively analyzed on due process grounds.
Law enforcement was alerted that drugs were being sold at this bar. As it does on a daily basis, it engaged undercover officers to find the dealers at the suspected location. We conclude the officer's conduct did not rise to that level of "outrageous" as required under the case law to support a finding of entrapment on due process grounds.
Accordingly, we reverse the trial court's order of dismissal and remand the case for reinstatement of the charges. The factual dispute between the State and the defendant prevents the resolution of subjective entrapment on a motion to dismiss. A jury may very well find the defendant not guilty on the basis of subjective entrapment. That, however, is a decision for another day.
REVERSED AND REMANDED.
STONE, WARNER, KLEIN, STEVENSON, SHAHOOD, GROSS, TAYLOR, JJ., concur.
FARMER, C.J., dissents with opinion, in which GUNTHER and POLEN, JJ., concur.
HAZOURI, J., Recused.
FARMER, C.J., dissenting.
I see no need to repeat what we said in the panel opinion affirming the decision of the trial judge dismissing this case. I write instead to make the following points.
The rationale of the en banc majority's position is this. In considering dismissal under the objective test for entrapment a trial Judge may not engage in any fact-finding, that the statute requires the jury to resolve the facts underlying an entrapment defense. See § 777.201(2), Fla. Stat. (2004) ("The issue of entrapment shall be tried by the trier of fact."). And so, in the majority's view, a pretrial motion to dismiss on the grounds of entrapment must be decided solely on undisputed facts  i.e., only on those facts which the State will concede  because otherwise the court would be invading the function the statute gave to the jury. The majority reasons that when the underlying facts for entrapment are disputed "law enforcement's conduct was not so outrageous that dismissal was warranted." Op. at 902. One should carefully note that this reasoning is not followed by any citation of authority. Nor does the majority advance any explanation why its proposition might be sustainable.
Judge Lebow did not specify which test for entrapment she relied on in dismissing this case. This is significant because entrapment takes two forms in Florida. The first form is essentially an affirmative defense centered around the accused's alleged lack of any predisposition to commit the crime. The second form is not an affirmative defense. In this second form of entrapment, the conduct of the government operates as a legal bar to the entire prosecution. In this second form, predisposition is not a material consideration. The first form is called the subjective test; the second form is the objective test. Munoz v. State, 629 So.2d *903 90, 98-99 (Fla.1993); Cruz v. State, 465 So.2d 516, 520 (Fla.1985) ("The subjective view recognizes that innocent, unpredisposed, persons will sometimes be ensnared by otherwise permissible police behavior. However, there are times when police resort to impermissible techniques. In those cases, the subjective view allows conviction of predisposed defendants. The objective view requires that all persons so ensnared be released."); Soohoo v. State, 737 So.2d 1108, 1109 (Fla. 4th DCA 1999) ("Thus, as it stands today, Florida courts embrace both the subjective and objective standards of entrapment."). Under the objective test, the contention is that as a matter of due process courts should not tolerate the conduct of the government regardless of the predisposition of the accused.
I do not think the majority's proposition banning all judicial fact-finding in objective entrapment cases is a correct statement of Florida law. Although the Legislature has reshaped the subjective test on entrapment into a specific statute under which the jury has a leading role, the supreme court made clear in Munoz that the entrapment statute does not bar the trial Judge from evaluating police conduct under the Due Process Clause:
"Because the legislature cannot abrogate an accused's due process rights, section 777.201 is inapplicable whenever a judge determines as a matter of law that law enforcement personnel have violated an accused's due process rights."
Munoz, 629 So.2d at 98; see also Art. I, § 9, Fla. Const., and § 777.201(2), Fla. Stat. (2004). Accordingly, it is now established law in this state that the trial judge is authorized to dismiss a criminal case when the conduct of the government should not be tolerated. The majority's view thus raises the question just how the trial judge is to carry out judicial authority to assess police conduct under constitutional law without engaging in some fact finding to determine precisely what that conduct is.
Before Munoz, the supreme court had already made clear that while the subjective test is ordinarily (but not exclusively, as I shall presently show) for the jury, the objective test is for the court alone:
"The due process defense based upon governmental misconduct is an objective question of law for the trial court, as opposed to the subjective predisposition question submitted to the jury in the usual entrapment defense." [e.s.]
State v. Glosson, 462 So.2d 1082, 1084 (Fla.1985). Munoz explained later that:
"section 777.201 neither prohibits the judiciary from objectively reviewing the issue of entrapment to the extent such a review involves the due process clause ... of the Florida Constitution, nor prohibits the judiciary from determining under the subjective test that, in certain circumstances, entrapment has been established as a matter of law."
Munoz, 629 So.2d at 101. In other words, even though the entrapment statute seems to require that all entrapment cases be submitted to a jury, actually the trial judge may take the issue from the jury when the evidence does not legally involve a true conflict. As for objective entrapment, Munoz held:
"the legislature cannot enact a statute that overrules a judicially established legal principle enforcing or protecting a ... constitutional right. Accordingly, section 777.201 cannot overrule a decision of this Court regarding entrapment in any case decided under the due process provision of ... the Florida Constitution."
629 So.2d at 98. There is not so much as a word here suggesting that under the objective test the judicial assessment of the police conduct may be made only when the *904 state stipulates to defendant's pretrial testimony.
It is inconceivable that any rule of law or principle would operate in a factual void. All legal rules and principles are drawn upon a background of pertinent facts. If some government conduct passes muster under the Due Process Clause, but some does not, the only basis to differentiate the good from the bad is on the facts involved. Someone has to decide what those facts are. If the objective test is solely for the judge and not the jury (as Glosson and Munoz hold), then the only person who is qualified to ascertain what the facts are raising a Due Process question must be the Judge. And to do that, it may be necessary to ascertain or resolve some of those facts.
Indeed the essence of the objective test on entrapment is that the very prosecution of the crime itself must be stopped because it was begotten by police conduct that our society does not want to tolerate under its organic law. It takes but a moment's reflection to understand that the evidence admitted during the criminal trial is unlikely to include all the facts relevant to an objective entrapment issue. This is so because the guilt of the accused in objective entrapment is largely irrelevant. Some of the police conduct may be outside the corpus of the alleged crime. Therefore a holding that all objective entrapment cases must turn on undisputed facts would mean that only when the government has admitted the facts implicating a due process issue can the law enforcement officials be found to have acted outside the constitutional norm.
Depending on officials to admit that they have engaged in acts raising a due process bar to prosecution, in order to evaluate the propriety of such conduct, is logically indistinguishable from asking the actor to decide whether the acts should be tolerated. Human beings have a bent of failing to recognize the invidious nature of their own conduct, especially when they are imbued with a sense of "mission" in a cause they conceive to be noble  like punishing persons believed to be involved in the drug trade. A holding that government conduct deemed intolerable under the Due Process Clause may be condemned by the court only when those engaged in such conduct trouble themselves to admit it would truly be against reason and experience. And because objective entrapment is meant to be preemptive and not an affirmative defense, it should ordinarily be determined before an accused is put to the burden of the trial. If the claim of objective entrapment is valid, any outcome of the trial in favor of the government will be nugatory anyway.
Even if there are circumstances when the facts underlying an issue of objective entrapment should be submitted to the jury, in this case the state waived the requirement. At the beginning of the hearing on defendant's motion to dismiss the case on entrapment grounds, the state argued that defendant had the burden of proving the basis for dismissal at the hearing. See Trans. of Hearing, December 19, 2002, at 3 (STATE ATTORNEY: "Well it's his burden; it's a motion to dismiss."). The state having thus impliedly conceded that defendant had the burden of proving facts at the hearing for any dismissal on the grounds of objective entrapment, the state has clearly waived a jury determination. On what theory should the judge be precluded from ascertaining those facts, especially since under Munoz the issue is solely within the province of the Judge? The en banc majority offer no such theory.
This waiver was repeated again after the presentation of evidence at the hearing during argument when the State plainly acknowledged the judge's authority to dismiss under the objective test without submitting *905 the issue to a jury. Id. at 29. The prosecutor recognized that the court is required to analyze the officer's conduct for due process purposes. The prosecutor conceded that Mike did not tell defendant during their encounter "who [Mike] was" but proceeded to argue that the officer's conduct here was not as outrageous as that in Strickland v. State, 588 So.2d 269 (Fla. 4th DCA 1991). By this argument, the prosecution urged the court to make factual findings as contended by defendant but then to hold them insufficient for dismissal as a matter of law. Hence the en banc majority is not only reversing on a ground that the state did not argue below but is reversing on a basis which the state invited the court to rule.
And even if the state had not waived the jury determination, when the testimony at the hearing is properly analyzed it is apparent that there is no real conflict in the testimony for purposes of objective entrapment. The majority's argument of factual conflict hinges entirely on whether Mike or defendant introduced the subject of drugs through the use of the word party. In other words, the only material thing truly disputed by Mike's testimony at that hearing is whether it was Mike who introduced the subject of drugs during the encounter between the two men at the bar. But Mike's testimony is legally ineffective to create a real conflict in the evidence for due process purposes.
According to Mike, the term party referred to illegal drugs. To recap the pertinent testimony, defendant had initially testified that it was Mike who first used the word party and that he thought Mike was referring to sex. In rebuttal, Mike testified that it was defendant who first used the word party and that Mike (but not necessarily the whole world) understood it to refer to drugs. Yet, in fact, Mike admitted to having to clarify to defendant that he was referring to drugs rather than sex in using the word party. Mike's testimony thus does not refute defendant's testimony that Mike was using both sex and drugs to induce a crime.
There is no recognized meaning attributed to the word party by any major dictionary that mentions the use of illegal drugs, but there is a recognized meaning referring to sexual conduct. See, e.g., AMERICAN HERITAGE DICTIONARY 1321 (3rd ed.) ("party ... 7. Slang a. An act of sexual intercourse. b. An orgy." [e.s.]). I recognize that dictionaries often fail to include some specialized, idiomatic meanings, and that it is possible for segments of the population to attribute eccentric meanings to common words. But such a special meaning would be applicable in this case only if someone trained and experienced in such usages had testified that there is a generally recognized meaning for party among drug users and dealers. No one offered such testimony. No expert testified to that effect.
The purpose of such testimony would have been to show that in using the term party both men meant to impart the same thought. The substance of Mike's testimony, however, was only that to him the word party meant drugs. Mike was not qualified as an expert to testify that, among those knowledgeable about drug deals, party usually means drugs. Therefore Mike's testimony does not challenge defendant's testimony that defendant understood party to mean sex.
Giving the evidence its proper legal import, the testimony from both participants in the encounter establishes inducement by the police as a matter of law. Nothing in Mike's testimony challenges the assertion that he was using implied sex to induce a drug transaction. That means that government promoted the crime  instead of detecting a crime already in the planning or operational stages. From this testimony *906 the trial court found that Mike, the government agent, used sex to entice defendant into a drug transaction.
In addition to improperly understanding the testimony and its absence of real conflict, the majority's holding as to the jury requirement in objective entrapment cases is mistaken for another reason. Any rule that all objective entrapment cases must be submitted to the jury unless the prosecution effectually admits its own misconduct would be in striking contrast with subjective entrapment cases where Munoz holds that the law allows some subjective entrapment cases to be decided before trial by the judge  even though the defendant has the burden of proving lack of predispositon. Munoz, 629 So.2d at 101 ("section 777.201 neither prohibits the judiciary from ... determining under the subjective test that, in certain circumstances, entrapment has been established as a matter of law."). The majority advance no reason why the standard for removing an objective entrapment case from a jury should be any more difficult than it now is for subjective entrapment.
The Munoz court explained that a trial Judge may take a subjective entrapment case from the jury and decide it as a matter of law:
"Section 777.201 directs that the issue of entrapment be submitted to the trier of fact. Such direction is consistent with the subjective evaluation of entrapment because the two factual issues above ordinarily present questions of disputed facts to be submitted to the jury as the trier of fact. However, if the factual circumstances of a case are not in dispute, if the accused establishes that the government induced the accused to commit the offense charged, and if the State is unable to demonstrate sufficient evidence of predisposition prior to and independent of the government conduct at issue, then the trial judge has the authority to rule on the issue of predisposition as a matter of law." [e.s.]
629 So.2d at 100. It is apparent from this statement that only three things are necessary for a judicial determination of entrapment: (1) the critical circumstances are not in dispute; (2) the accused establishes government inducement; and (3) the police are unable to present legally sufficient evidence of predisposition before, and unconnected with, the government conduct. All three things are made here.
The critical circumstances are not in dispute. Defendant was unknown to the police before Mike sat next to him at the bar. Defendant had no arrests or any record for criminal activities. Although police had received information that illegal drugs were being sold at the bar, no one mentioned or referred to defendant as being involved in any such activity. He was not a target of any police investigation. When Mike sat next to him he was but a face in the crowd.
The accused has established government inducement. As I have just shown, properly understood, the testimony is clear that it was Mike who introduced the subject of drugs, not defendant. Thus the record is uncontradicted that the conduct of the officer did in fact promote defendant into committing the crime. The unrebutted testimony of defendant was found by the trial judge to involve using sex as a lure to induce an unsuspecting man into a drug transaction promoted by the police. The dismissal on the basis of objective entrapment is therefore based on legally proper procedures and represented a decision founded on a matter of law.
But let's assume (without so holding) that all objective entrapment cases must be decided only after all the evidence is in at trial. Let's even further assume (also without so holding) that for objective test purposes the trial Judge is required to accept the jury's view of the facts. Because *907 Judge Lebow did not expressly state that she was relying on the objective test exclusively in granting the pretrial motion, it would still be necessary to consider whether dismissal was proper under the subjective test. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979) (trial court's decision is presumed correct on review and burden is on appellant to demonstrate error; even when based on erroneous reasoning decision of trial court will generally be affirmed if alternative theory supports it). Because both forms of entrapment are recognized and the trial judge did not expressly limit her decision to only one of them, it is necessary for the majority to consider whether the result could be sustained under either form. The majority has an obligation to consider whether dismissal was correct for another reason.
The police here were unable to present legally sufficient evidence of predisposition before, and unconnected with, the government conduct. To prove guilt after defendant's evidence, the state had the burden to prove predisposition. Predisposition has to be shown as "prior to and independent of the government conduct at issue." 629 So.2d at 100. As we said in Farley v. State, 848 So.2d 393 (Fla. 4th DCA 2003), where we took specific notice of the common meaning of the word pre disposition: "The prefix pre indicates that the disposition must exist before first contact with the government." 848 So.2d at 396.
Plainly all of the State's evidence on predisposition deals with events arising during the encounter between defendant and Mike. The State did not suggest the existence of any evidence of any predisposition on defendant's part before the encounter. As the trial judge noted, defendant was not a target of any investigation. The police had no previous basis to believe that he had been identified or named as someone dealing in drugs. The state did not even know of his existence until Mike sat down next to him in the bar. The State had no information about him, by tip or otherwise. When Mike began making advances to defendant at the bar, it was with absolutely no reason to suspect him of anything.
In short, the state's entire evidence on predisposition relates to events involving Mike's encounter with defendant and ensuing events. This is plainly insufficient. Munoz, 629 So.2d at 100; see also Jackson v. State, 810 So.2d 545 (Fla. 4th DCA 2002) (acknowledging trial court authority to decide whether to submit subjective entrapment issue to jury or instead determine question as matter of law). Munoz requires a defendant initially to offer evidence that, if believed, would constitute inducement by the police and that he was not predisposed to commit the crime.[2]Munoz, 629 So.2d at 99; Dial v. State, 799 So.2d 407, 408-09 (Fla. 4th DCA 2001). The burden of proof then returns to the state to disprove entrapment beyond a reasonable doubt. Munoz, 629 So.2d at 99. The state's evidence must then be capable of showing that defendant had a predisposition to commit the crime existing before the police engaged in the conduct of inducement. Munoz, 629 So.2d at 100.
*908 Defendant's pretrial testimony was sufficient to make out a prima facie case of inducement by the officer. There is no evidence that defendant was predisposed to commit the crime until his encounter with Mike had begun. A number of cases after Munoz have held that the trial court was authorized to dismiss the entire case then and there, without awaiting a jury determination. See Farley, 848 So.2d at 396-97 ("The State presented no evidence of past deviant behavior or criminal activity on Farley's part. Therefore, entrapment rather than crime was at hand, and as a matter of law, the trial court should have granted Farley's motion to dismiss."); State v. Rokos, 771 So.2d 47 (Fla. 4th DCA 2000) ("although Rokos expressly denied it, there was evidence that in August of 1996  before the police had enlisted Kleinbach's help in the investigation  Rokos offered Kleinbach's lawyer, John Garcia, money to keep Kleinbach quiet."); and Davis v. State, 767 So.2d 601 (Fla. 4th DCA 2000) (jury question presented as to entrapment; defendant clearly predisposed to engage in drug activity).
It needs stressing that in this case the outcome would be no different at trial. The State would still be faced with the same burden. The procedural posture of the present case is identical to Farley, where we explained:
"inducement and lack of predisposition were clear upon the face of the facts. The State presented no evidence of past deviant behavior or criminal activity on Farley's part. Therefore, entrapment rather than crime was at hand, and as a matter of law, the trial court should have granted Farley's motion to dismiss. After all: `When the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene'."
Farley, 848 So.2d at 397 (quoting Jacobson v. United States, 503 U.S. 540, 548-549, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)). The dismissal in Farley is not based on any jury determination of the facts surrounding the entrapment claim but instead on evidence presented at a pretrial hearing on defendant's motion to dismiss on grounds of entrapment. Our reversal in Farley is based solely on evidence adduced at that pretrial hearing. There is no reasoned basis on which to distinguish Farley.
In this regard, the majority's decision also conflicts with decisions of other district courts on the identical issue. See Robichaud v. State, 658 So.2d 166 (Fla. 2d DCA 1995) (error to submit subjective entrapment issue to jury where defendant established by testimony at pretrial hearing government's inducement and his lack of predisposition); State v. Ramos, 632 So.2d 1078 (Fla. 3d DCA 1994) (testimony at pretrial hearing on defendant's motion to dismiss established government inducement and his lack of predisposition; not necessary to submit entrapment issue to jury.); Beattie v. State, 636 So.2d 744 (Fla. 2d DCA 1993) (affidavit in pretrial motion to dismiss on grounds of entrapment established inducement and lack of predisposition, making it unnecessary for jury to decide issue). The majority has not even attempted to explain why the present case is not in conflict with these.
Upon consideration of either test, there is no legal basis to reverse the trial judge. Nor is there any reason to take up this case en banc to reverse the trial judge without running into conflict with the supreme court, with our own decision in Farley, and with the other district courts in Robichaud and Ramos and Beattie.
I therefore dissent.
NOTES
[1] As Justice Kogan noted in his concurrence in Munoz, "[t]he due-process entrapment defense recognized in Cruz, Glosson, and [State v.]Hunter[, 586 So.2d 319 (Fla.1999)] essentially is the same as `objective entrapment.' Thus, the majority appears to toss objective entrapment out the front door but then readmits essentially the same concept into Florida law via the rear entrance, with some minor tinkering as to analysis." Id. at 102.
[2] The majority would seem to hold that defendant must do more than merely offer evidence of inducement, that instead defendant must conclusively prove inducement before any burden returns to the State to defeat entrapment beyond a reasonable doubt. Nothing in Munoz so states, and it would be illogical anyway. The majority's view would require bifurcation in all entrapment cases; first the court would have to submit to the jury the single question whether defendant has proved inducement, and only if the jury found inducement would the burden return to the State to prove the absence of entrapment beyond a reasonable doubt. There is nothing anywhere suggesting the supreme court had that procedural result in mind.