POLEN, J.
The State appeals from the dismissal of sale of cocaine and possession charges against appellee. The issue is whether the undercover officers’ actions, in giving ap-pellee cocaine after the transaction was complete and allowing him to go into the community with that substance, violated due process and required that the charges against appellee be dismissed. We answer that question in the affirmative, but as to the possession charge only. The sale of cocaine charge should stand, as that offense was already completed when the officers allowed appellee to. take some of the crack cocaine.
Appellee moved to dismiss the sale and possession charges, arguing he was denied due process and that his constitutional rights were infringed upon when officers gave him cocaine as payment for setting up a drug buy.
On the day in question, narcotics agents Bango and Kabis were conducting undercover video buys, with the use of a hidden camera. The video of this transaction reflects that the officers drove up to appel-lee, who was sitting down near the South-gate Motel. Agent Bango calls out to him a few times, asking for “Lonnie.” Appel-lee then approaches the vehicle. Agent Bango tells appellee they had come to meet Lonnie, who “was going to take them to get ‘forty’ someplace,” meaning forty dollars worth of crack cocaine. Appellee then replies something unintelligible about a “forty.” Agent Bango says, “if you can do it,” and invites appellee to “hop in the back.”
Appellee enters the undercover vehicle and asks for a cellular telephone. He says they are going to see “Solo.” Appellee is heard telling “Solo” over the phone, that he “need[s] forty.” Appellee then directs the undercover officers to another location. There, they are flagged down by a black male, and proceed to conduct the transaction. Agent Bango testified that the black male handed him crack cocaine, in exchange for two twenty-dollar bills. Bango then handed the cocaine to Agent Kabis. Appellee did not handle the money or cocaine. After the transaction, appellee is heard saying, “give me some love, bro,” which Agent Bango interpreted to mean that he wanted a piece of the crack cocaine. Agent Kabis opened his hand and replied, “just don’t hurt me” — which Agent Bango understood to mean, “don’t take too much.” Appellee proceeded to take two *894 pieces of crack cocaine from Agent Kabis’ hand. Neither man’s hands are visible in the video of the transaction. Bango then drove appellee back to the Southgate motel and dropped him off.
After appellee exited the vehicle, he was stopped by law enforcement for identification purposes.[1] Appellee was not searched. or arrested at that time, however, and the cocaine was not recovered. Appellee was arrested three weeks later. .
On cross-examination,. Bango testified that this was not a reverse sting operation. Rather, they used appellee as a “broker.” Bango, who was experienced in conducting drug transactions and setting up buys, admitted that the sheriffs office does not authorize him to give crack cocaine to citizens, though Bango indicated he had done so before in other cases.
In granting the motion to dismiss the charges, the trial court concluded that to prosecute appellee for sale and possession of cocaine under these circumstances violated his due process rights under the United States and Florida Constitutions.
The State argues that the law enforcement conduct in this case was not so egregious as to violate appellee’s due process rights, and thus, the trial court erred in dismissing the charges. Alternatively, the State contends that only the possession charge should have been dismissed, for any due process violation did not relate to the already completed offense of sale of cocaine. While we conclude that the trial court was correct to dismiss the possession charge, we agree with the State’s second argument, that the sale of cocaine charge should stand.
“Governmental misconduct that violates a defendant’s due process rights under the Florida constitution requires dismissal of criminal charges.” Anderson v. State, 574 So.2d 87, 92 (Fla.1991). This court reviews de novo the trial court’s legal conclusion as to whether the facts constitute a due process violation. State v. Myers, 814 So.2d 1200, 1201 (Fla. 1st DCA 2002).
“Cases finding a due process violation based on outrageous government conduct have one common thread: affirmative and unacceptable conduct by law enforcement or its agent.” Bist v. State, 35 So.3d 936, 940 (Fla. 5th DCA 2010). For example, in State v. Williams, 623 So.2d 462, 465 (Fla.1993), our supreme court held that the illegal manufacture of crack cocaine for use in “reverse sting” operations constituted governmental misconduct contrary to the due process clause of the Florida Constitution. See also Farley v. State, 848 So.2d 393, 398 (Fla. 4th DCA 2003) (holding that law enforcement’s manufacture of child pornography as part of an email solicitation, coupled with promises of protection from government interference, was a violation of due process); Soohoo v. State, 737 So.2d 1108, 1111 (Fla. 4th DCA 1999) (holding that an undercover agent’s consignment arrangement for “the sale of drugs represents governmental conduct which this court cannot condone.”). “The rule applies regardless of the defendant’s predisposition and serves to check outrageous police conduct.- This rule is narrowly applied and is limited to those instances where the government’s conduct so offends decency or a sense of justice that the *895 judicial power may not be exercised to obtain a conviction.” State v. Taylor, 784 So.2d 1164, 1167 (Fla. 2d DCA 2001) (citing Roehin v. California, 342 U.S. 165, 173, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Malinski v. New York, 324 U.S. 401, 416-17, 65 S.Ct. 781, 89 L.Ed. 1029 (1945)).
Although there are no cases directly on point, Taylor, cited by both parties, is instructive. In Taylor, an undercover officer and a confidential informant purchased cocaine from the defendant at his home on two occasions. 784 So.2d at 1166. On the third occasion, they returned with a search warrant, but did not conduct a search. Instead, they made another narcotics purchase in a trafficking amount. Id. The officers returned the next day to execute the search warrant and arrest the defendant. Id. The trial court denied the motion to dismiss the counts relating to the first two transactions but granted the motion as to the third sale. Id. The court concluded that the third purchase added nothing from an evidentiary purpose and constituted a violation of due process under the Florida Constitution. Id.
On appeal, Taylor argued the officers had violated his due process rights by failing to execute the search warrant and creating the situation in which the sale occurred. 784 So.2d at 1167. The second district disagreed, however, and reversed the order of dismissal to reinstate the charge. The appellate court explained:
The record is clear that the drugs were located at Mr. Taylor’s residence and, in contrast to the situation in the cited cases, law enforcement officers did not manufacture, deliver, or participate in the sale of the illegal drugs. The record is likewise clear that Mr. Taylor voluntarily engaged in the criminal conduct of selling illegal drugs.

Id.

Similarly, here, it was appellee and not the undercover agents who arranged the sale. Nor did the agents promise ap-pellee anything in return. As depicted in the video, appellee approached the undercover vehicle, indicated that he could get “forty,” and entered the vehicle of his own accord. Appellee then requests a cellular phone and is heard telling “Solo” over the phone, that he “need[s] forty.” Appellee then directs the undercover agents to another location, where the transaction ■ is completed. Clearly, like Mr. Taylor, ap-pellee voluntarily engaged in the sale— albeit as a principal.
As for the possession charge, however, the officers did create the situation for that offense to occur. While the State claims that appellee asked the officers for some of the cocaine as payment, such a statement is not heard on the recording of the transaction. Rather, appellee is heard saying “give me some love, bro.” While Agent Bango testified that he believed ap-pellee was asking for cocaine, again, appel-lee did not make that specific request. The officers could just have easily offered appellee money or food, but instead chose to offer him crack cocaine, an illegal, highly addictive drug. Appellee was then permitted to leave with the substance, either to consume or release back into the community. Law enforcement, who stopped appellee after he exited the undercover vehicle, could have made an arrest at that time. Instead, they let appellee go, and he was not arrested for another three weeks. Notably, this was not a situation where law enforcement furnished the defendant with a controlled substance, as part of a reverse sting operation. See, e.g., State v. Brider, 386 So.2d 818, 821 (Fla. 2d DCA 1980) (reversing dismissal of information charging appellee with possession of cannabis with intent to sell or deliver on the premise that “furnishing the contraband with which the defendant is later charged with *896 handling, without more, does not constitute governmental misconduct... .”)■
As it pertains to the possession charge, the law enforcement conduct which took place here represents that which this court cannot condone. Finding that the police misconduct was sufficiently egregious to warrant dismissal of that charge, we affirm, in part. As discussed, however, the sale of cocaine charge should stand. The two charges are not “inextricably intertwined,” as appellee proposes.[2]

Affirmed in part, reversed in part, and remanded for jurther proceedings consistent with this opinion.

CIKLIN and LEVINE, JJ., concur.

. As explained by Agent Bango, the purpose for stopping appellee at this point was,
[s]o we knew his identity, as this was an ongoing operation. We had just started into the City of Lake Worth doing video buys, so our policy was we like to get good firm identities. So we had a marked unit stop him, ask him his name, identification, take a picture, get his thumb print. That way we know who he is, we don’t arrest the wrong person.

. To the State’s secondary argument, that any due process violation did not relate to the already completed offense of sale of cocaine, appellee merely asserts that the sale and possession charges were "inextricably intertwined.” However, the case appellee cites in support of this proposition, D.M. v. State, 714 So.2d 1117 (Fla. 3d DCA 1998), deals with the admissibility of "other act” evidence, and has no bearing on whether a charge is related to outrageous government conduct. See id.