DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DALIA A. DIPPOLITO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-2486

[June 5, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 502009CF009771AXXXMB.

Andrew B. Greenlee of Andrew B. Greenlee, P.A., Sanford, and Gregory C. Rosenfeld of the Law Offices of Greg Rosenfeld, P.A., West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for appellee.

### *ON MOTION FOR REHEARING AND REHEARING EN BANC*

WARNER, J.

We deny the motion for rehearing and rehearing en banc, but we substitute our previous opinion with the following.

Dalia Dippolito appeals her conviction for solicitation to commit first-degree murder of her husband for which she was sentenced to sixteen years in prison. She raises three issues: 1) whether the trial court erred in allowing the State to present evidence of uncharged crimes; 2) whether the conduct of law enforcement constituted objective entrapment, which the court erred in refusing to submit to the jury; and 3) whether the court erred in allowing the jury to consider unsubstantiated bad acts evidence. As to the first issue, the presentation of the uncharged crime evidence occurred after the defendant opened the door to the evidence; thus, the court did not abuse its discretion in allowing the evidence. As to the

second issue, the issue of objective entrapment is a matter of law for the court and not the jury, and the court did not err in denying the appellant's claim of objective entrapment. As to the third issue, the bad act evidence was inextricably intertwined with other evidence and was necessary to show the context out of which the charged crime arose. We thus affirm as to all issues raised.

This is an appeal of the third trial of appellant. This court reversed the first trial based upon an error in jury selection. *See Dippolito v. State*, 143 So. 3d 1080 (Fla. 4th DCA 2014). The second trial resulted in a hung jury. As set forth in our former opinion, the basic facts of the charge are as follows:

> In the late summer of 2009, appellant's lover approached the Boynton Beach Police Department and reported that appellant was planning to kill her husband. An investigation ensued, during which police videotaped incriminating meetings between appellant and her lover, as well as between appellant and a purported hit man, who was in reality an undercover officer. The hit man agreed to shoot and kill appellant's husband in their home and make the killing look like part of a burglary.

> Subsequently, police staged a fake crime scene at appellant's home and informed her that her husband had been killed in the manner described by the hit man. Appellant's reaction was videotaped by the police and by the television show "Cops," which was then filming the Boynton Beach Police Department. Appellant was subsequently taken to the police station and interviewed. The police eventually told appellant that her husband was alive and revealed the hit man was an undercover officer. Appellant maintained her innocence.

> She was charged with solicitation to commit first degree murder with a firearm.

*Id.* at 1081.

After the reversal of the first conviction in *Dippolito I*, the defense filed a motion to dismiss based on objective entrapment due to allegations of BBPD's misconduct in the investigation; claims of BBPD's failure to investigate her lover, who told the police of Dippolito's murder plan; an assertion that the lover did not wish to cooperate; and an allegation of

BBPD's failure to supervise the lover. The trial court conducted an evidentiary hearing and denied the motion to dismiss, holding that the conduct of the police did not amount to objective entrapment. Appellant filed a petition for writ of prohibition with this court, arguing that denial of dismissal was improper based upon objective entrapment. Neither in the trial court nor in this court did appellant argue that the issue was one for the jury. This court dismissed the petition.

Prior to the second trial, appellant moved in limine to prevent the State from introducing evidence that Dippolito had previously unsuccessfully attempted to poison her husband with antifreeze. The State stipulated that it would not admit evidence relating to the poisoning allegation. The trial court agreed, although noting that the ruling could change depending on the evidence presented at trial. At trial, the jury was deadlocked, and a mistrial was declared.

Prior to the third trial, appellant also moved the court for an order precluding the State from introducing evidence of collateral bad acts. She argued that the collateral bad acts were not "inextricably intertwined" with the charged offense because the State was previously able to present its case during the second trial without relying on the prior bad acts evidence. The trial court denied the motions.

At the third trial, the jury heard extensive evidence of appellant's conduct both before and after her lover approached the police to inform them of her plans to kill her husband. Much of it involved police-recorded conversations between appellant and her lover after the lover agreed to become an informant. When appellant called the lover as a witness in her case, the State sought, on cross-examination, to question him about appellant's prior admission of attempting to poison her husband. The court ruled the testimony was admissible for impeachment purposes of the lover because the defense had opened the door when the lover testified that he didn't believe Dippolito actually wanted to have her husband killed. The court allowed the State to ask the lover whether appellant had told him that she had previously tried to poison her husband using antifreeze. The lover responded that she had.

At the conclusion, despite the fact that the court had already held an evidentiary hearing and determined that there was no objective entrapment, appellant requested a jury instruction on objective entrapment, which required the jury to determine whether the police conduct was so egregious that it offended notions of justice and fairness. The court denied the instruction. The jury convicted her as charged, and

the court sentenced her to sixteen years in prison. She appeals her conviction.

In her first issue on appeal, Dippolito argues the court improperly allowed the State to introduce evidence that she told her lover that she had previously tried to poison her husband with antifreeze. Questions about the admissibility of evidence are within the discretion of the trial judge, as limited by the rules of evidence. *Nardone v. State*, 798 So. 2d 870, 874 (Fla. 4th DCA 2001). While she contends that this court found the testimony inadmissible in *Dippolito I*, we did not expressly decide that issue. There, the defense argued that the jury venire had been tainted because they had all heard one juror say that she had heard Dippolito had attempted to poison her husband. We ruled that the trial court erred by failing to strike the jury panel after hearing the allegation. *Dippolito I*, 143 So. 3d at 1085. We did not rule that the evidence could not be admitted under any circumstances.

When ruling on the pre-trial motion in limine regarding the poisoning, the court notified the parties that the ruling was subject to change if something occurred during the trial to cause the judge to rethink the earlier ruling. Something did occur during trial to change the ruling—the defense elicited testimony from the lover that he didn't believe that appellant actually wanted to kill her husband. Defense counsel thus "opened the door" for impeachment of the lover with evidence that appellant had told him of prior attempts to kill her husband. As the court explained in *Ramirez v. State*, 739 So. 2d 568, 579 (Fla. 1999):

> As an evidentiary principle, the concept of "opening the door" allows the admission of otherwise inadmissible testimony to "qualify, explain, or limit" testimony or evidence previously admitted. *Tompkins v. State*, 502 So. 2d 415, 419 (Fla. 1986); *see Huff v. State*, 495 So. 2d 145, 150 (Fla. 1986); *Blair v. State*, 406 So. 2d 1103, 1106 (Fla. 1981).
>
> The concept of "opening the door" is "based on considerations of fairness and the truth-seeking function of a trial." *Bozeman v. State*, 698 So. 2d 629, 631 (Fla. 4th DCA 1997).

Here, we conclude that the court did not abuse its discretion in admitting the evidence of appellant's earlier attempt to poison her husband. That evidence was necessary to limit the lover's testimony on direct. It also explains why the lover initially approached the police—because he did actually believe appellant was going to kill her husband.

4

As to her second issue, appellant contends that law enforcement's conduct in this case amounted to objective entrapment as a matter of law. She argues that law enforcement's treatment of her lover was outrageous conduct. She contends, as well, that the police participation in the "Cops" TV program constituted objective entrapment. The review of the denial of a motion to dismiss founded on objective entrapment is de novo. *Bist v. State*, 35 So. 3d 936, 939 (Fla. 5th DCA 2010).

In considering objective entrapment, courts look to the totality of the circumstances, focusing on "whether the government conduct 'so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction.'" *Hernandez v. State*, 17 So. 3d 748, 751 (Fla. 5th DCA 2009) (quoting *State v. Blanco*, 896 So. 2d 900, 901 (Fla. 4th DCA 2005)). The types of conduct which have led to a finding of objective entrapment are relatively limited. The illegal manufacturing of crack cocaine by police to be used in police-initiated sale transactions was found to be objective entrapment in *State v. Williams*, 623 So. 2d 462 (Fla. 1993). In *State v. Glosson*, 462 So. 2d 1082 (Fla. 1985), the Florida Supreme Court found that the police tactic of using a contingent fee arrangement for the testimony of an informant constituted a due process violation because it manufactured, rather than detected, crime. In *State v. Hunter*, 586 So. 2d 319 (Fla. 1991), the supreme court found objective entrapment where the informant's contract with police required him to obtain at least four kilograms of cocaine within a certain time period in order to reduce his sentence, thus providing an incentive for the informant to target otherwise innocent persons. In *Dial v. State*, 799 So. 2d 407, 410 (Fla. 4th DCA 2001), we held that an "informant's conduct . . ., targeting an innocent person under her supervision and exploiting her weaknesses without any efforts from law enforcement to avoid entrapment or monitor the informant's activities," constituted objective entrapment.

None of these circumstances appear in this case. Although appellant asserts that the police threatened the lover to gain his cooperation, the trial court found that he was not threatened by police. It was the lover who first approached the police with his concern that appellant would kill her husband, not the other way around. The lover was not attempting to reduce his own exposure to a criminal sentence, nor was he being paid by law enforcement. And during cross-examination, the lover admitted that he was not actually threatened with prosecution.

Appellant also asserts that the failure to supervise the lover, who then exerted substantial pressure on appellant, constituted objective entrapment. Failure to supervise a CI will not support dismissal unless

the lack of supervision results in unscrupulous conduct by the informant. *Bist*, 35 So. 3d at 941. Without more, this failure does not rise to the level of a due process violation. *See State v. Figuereo*, 761 So. 2d 1252, 1255 (Fla. 3d DCA 2000). The mere fact that the lover made repeated phone calls to appellant without the police monitoring them is insufficient to show entrapment.

With respect to the "Cops" television filming, the police did not involve the show in the surveillance or investigation of appellant until after appellant had already taken all the steps to solicit the murder of her husband. It was only at the point that she was being arrested, after the crime was complete, that the TV program filmed the arrest. As the crime of solicitation to commit murder was completed before "Cops" was involved, the agreement between the police and the show with respect to the filming did not constitute a due process violation.

Relatedly, appellant contends that the court erred in refusing to submit her objective entrapment defense to the jury. The appellant had already moved to dismiss based upon objective entrapment, and the trial court held an evidentiary hearing and denied the motion based upon the court's thorough review of the evidence.

Objective entrapment is a matter of law for the court to decide. *See Cruz v. State*, 465 So. 2d 516, 521 (Fla. 1985). Appellant points to *Delice v. State*, 878 So. 2d 465 (Fla. 4th DCA 2004), for the proposition that the defense should be submitted to the jury, but *Delice* does not go that far. In *Delice*, the defendant claimed that a confidential informant raped her, causing her to fear the CI and making her susceptible to the CI's inducements. *Id.* at 467. The opinion states, "With respect to objective entrapment, we find Delice's allegation of rape to be unsubstantiated and believe this to be a jury question." *Id.* at 468. At the most, this would permit a trial court to submit discrete factual disputes to the jury, but the ultimate decision of whether the conduct of law enforcement constitutes objective entrapment remains for the court, not a jury, to decide. Moreover, there is no indication in the opinion that the court had already determined the factual issues and denied the objective entrapment claim on its merits prior to trial, as occurred in this case.

The supreme court has clearly stated, both in *Cruz* and again in *Munoz v. State*, 629 So. 2d 90 (Fla. 1993), that objective entrapment is a question of law for the court. In *Munoz*, the court again explained that conduct of law enforcement which violates due process can constitute entrapment, which is a decision made by a judge not a jury, because it is an affront to

6

the judicial system, regardless of its implications to the individual defendant. Objective entrapment does not involve elements of a crime but focuses on the due process rights of all citizens to be free of egregious police conduct. "While we must not tie law enforcement's hands in combatting crime, there are instances where law enforcement's conduct cannot be countenanced and the courts will not permit the government to invoke the judicial process to obtain a conviction." *Id.* at 98 (quoting *State v. Williams*, 623 So 2d 462, 465 (Fla. 1993)). "The principle of due process imposes upon the courts 'the responsibility to conduct "an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend [the] canons of decency and fairness . . . ."'" *Soohoo v. State*, 737 So. 2d 1108, 1110-11 (Fla. 4th DCA 1999) (quoting *Williams*, 623 So. 2d at 465). Even if there were disputed issues of fact, the trial court resolved those issues on the motion to dismiss filed by the appellant and determined that law enforcement's conduct was not so outrageous as to offend due process principles. *See Blanco*, 896 So. 2d at 902 (reversing a trial court's dismissal of charges on objective entrapment grounds where there was a disputed issue of fact between the defendant and the State, and noting that even if the defendant's factual allegations were assumed as true, the law enforcement's conduct was not so egregious as to require dismissal of the charges).

The United States Supreme Court has held that the Fifth and Sixth Amendments to the Constitution require that all elements of a crime must be submitted to the jury for determination, but for other procedures, including affirmative defenses, the Constitution does not require a jury determination. *See United States v. Gaudin*, 515 U.S. 506, 511 (1995); *see State v. Ellis*, 723 So. 2d 187, 189-90 (Fla. 1998). Assuming that objective entrapment is an affirmative defense, it clearly does not involve the determination of an essential element of the crimes with which appellant was charged. Therefore, there is no right to a jury determination of the issue.

The matter of objective entrapment is a matter of law for the court, and the court determined the issue without assistance from the jury. We find no mandatory requirement that the issue be submitted to the jury for resolution. While we would not preclude a trial court, in its discretion, from submitting discrete factual disputes to a jury in the court's determination of the due process issue of objective entrapment, we hold that there is no constitutional obligation to submit the claim to the jury.

Finally, appellant claims that the court allowed into evidence several collateral crimes which were not inextricably intertwined with the

solicitation to commit murder. These included: 1) theft of money from her husband which was allegedly earmarked for restitution in a criminal case against the husband; 2) that she attempted to hire another individual to kill her husband; 3) that she illegally planted drugs in her husband's car to cause him to violate probation; 4) an attempted theft of a gun from her lover; 5) attempting to defraud her husband out of the title to his home; and 6) her relationship with another lover and various texts between them, some of which discuss her efforts to get rid of her husband.

"The admissibility of collateral crime evidence is within the discretion of the trial court, and the trial court's ruling shall not be disturbed upon review absent an abuse of that discretion." *Hodges v. State*, 885 So. 2d 338, 357 (Fla. 2004). "[C]ollateral crimes evidence is 'inextricably intertwined' if the evidence is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s)." *Ballard v. State*, 66 So. 3d 912, 918 (Fla. 2011).

The court did not abuse its discretion in admitting this evidence. Without reference to these other crimes, it would have been impossible to give a complete or intelligent account of the criminal episode and how it developed over time. The text messages were entered into evidence to show that Dippolito had an ongoing plot, first to have her husband's probation revoked in order to obtain his assets. And later, when she failed to get his probation revoked, she plotted to murder him. The evidence was relevant and established the entire context out of which the charged crimes arose.

For the foregoing reasons, we affirm appellant's conviction and sentence.

CIKLIN and LEVINE, JJ., concur.