683 So.2d 504 (1995)
David NADEAU, Appellant,
v.
STATE of Florida, Appellee.
No. 93-3792.
District Court of Appeal of Florida, Fourth District.
December 20, 1995.
Emilie M. Tracy of Emilie M. Tracy, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
PER CURIAM.
We deny appellant's motion for rehearing, but we withdraw the opinion of the court filed July 19, 1995 and substitute the following opinion.
David Nadeau appeals his conviction of trafficking in cocaine in an amount of 400 grams or more and his fifteen year mandatory minimum prison term and $250,000 fine stemming from his involvement in a reverse *505 sting operation. We hold the trial court erred when it denied Nadeau's motion for judgment of acquittal and reverse his conviction.
Appellant became involved in the reverse sting operation as a result of his acquaintance with David Antar, a convicted felon participating in a substantial assistance program. Antar's cooperation with authorities included providing the police and DEA agents with a list of possible targets involved in narcotics dealing for investigation, including appellant. Antar claimed that he and his girlfriend had previously seen Nadeau with forty pounds of marijuana, he had sold personal amounts of cocaine to Nadeau on numerous occasions, and he had been approached by Nadeau to obtain two kilograms of cocaine. The record shows that Antar had been instructed by the authorities not to entrap or coerce anyone into participating in a planned reverse sting operation. According to Antar, he introduced Nadeau to Ray Shackoor, an undercover detective, after Nadeau approached Antar in order to obtain two kilograms of cocaine. Antar's involvement essentially ended after appellant contacted the undercover detective.
Nadeau, in his trial testimony, contradicted Antar's version of events. He testified that he met Antar at the gym where they both worked out and they would occasionally socialize on the weekends. He said that he was afraid of Antar because of an incident which occurred in June 1991, during which Antar pointed a loaded shotgun at his stomach and threatened to "blow him away." In October 1992, Antar phoned Nadeau from jail and asked Nadeau to retrieve some cocaine from his house. Nadeau refused. Antar persisted, stating he would rot in jail if Nadeau refused to sell the cocaine to pay Antar's attorney's fees. Nadeau maintained that Antar again threatened him and made new threats against his family. Antar began to harass Nadeau in October 1992, making collect calls to Nadeau's home two or three times a day through December 1992, in addition to numerous three-way calls set up between Antar's girlfriend, Antar and Nadeau. At least twenty-three of the calls Antar made from jail were documented in phone records, but none of the conversations between Antar and Nadeau were recorded or monitored by the authorities.
Toward the end of November 1992, Nadeau testified that he fulfilled Antar's request to sell the drugs in light of renewed threats against him and his family. Acting under orders by Antar, Nadeau approached a man named Mike whom he thought was selling drugs. He informed Mike that he knew a supplier of drugs. Nadeau then reported to Antar that he may have found a prospective buyer. Antar indicated that Nadeau could acquire some cocaine from Ray Shackoor. Antar coached him in the parlance of the drug trade and how to "act" like a drug dealer in front of Shackoor.
Nadeau initially contacted the detective by telephone on December 7, 1992. During that discussion and four subsequent conversations, Nadeau and Shackoor negotiated a deal in which Shackoor offered Nadeau a discounted price on the cocaine in order to induce Nadeau's participation in the deal. As Nadeau did not have sufficient funds to make his own purchase of cocaine from Shackoor, the detective agreed to "front" the drugs to Nadeau in order to effectuate the sale of narcotics to Mike. At trial, Shackoor stated that Nadeau communicated with him about the drug trade. The pair discussed the price Nadeau would pay Shackoor and the price Nadeau would receive from the buyer. Shackoor confirmed, however, that Nadeau appeared ignorant in the manner in which he conducted himself in the drug deal; for instance, Nadeau asked Shackoor whether cocaine goes bad after a while. During one conversation with Shackoor, Nadeau stated that they should "roll" Mike, who presumably would have $26,000 in cash in his possession when transacting the deal. Detective Shackoor recorded each conversation he had with Nadeau and tape-recorded and videotaped the actual transaction between Nadeau and himself. An audiotape containing appellant's alleged future commission of a robbery was admitted into evidence. Nadeau explained that he had no intention of committing a robbery and was merely trying to "act tough."
*506 When Nadeau transacted the deal with Mike, he had no money on his person. However, Nadeau had one kilogram of cocaine in his possession, although he was only to bring one gram of cocaine as a sample for the buyer. The drugs were to be sold to the buyer substantially below market price. Nadeau had no prior criminal history. He was lawfully employed at the time of this transaction. The state offered no evidence to prove that Nadeau used drugs or engaged in any drug dealings.
Nadeau contends the government actions in this case constitute misconduct in violation of his due process rights under Article I, Section 9 of the Florida Constitution, regardless of any predisposition of Nadeau to commit the alleged offense. See State v. Williams, 623 So.2d 462 (Fla.1993). Appellant maintains that the conduct of the law enforcement agents in the instant case was so outrageous as to deny appellant his constitutional right to due process when they failed to adequately supervise Antar's activities. See State v. Glosson, 462 So.2d 1082, 1084 (Fla.1985) (citing United States v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 1642-43, 36 L.Ed.2d 366 (1973)).
A similar case before this court is State v. Anders, 596 So.2d 463 (Fla. 4th DCA), rev. denied, 604 So.2d 488 (Fla.1992). In that case, Livermore, an informant, agreed to help procure arrests of persons for drug offenses in order to lessen his sentence for a drug related offense. Without guidance from the officials and without knowledge of how to avoid entrapment, Livermore set up his own reverse sting operation with the defendant Anders. There was no inquiry made by the police to ascertain whether Anders had a criminal history. The detectives never told Livermore, who acted as the seller, to wear a body bug, never offered to substitute for him during the transaction, and never surveilled Livermore as he met with the defendant Anders and a codefendant. The court concluded:
[D]ue process of law will not tolerate the law enforcement techniques employed in this case. Sending an untrained informant out into the community, with no control, no supervision and not one word of guidance or limitation about whom he may approach or what he should do was an invitation to trouble.... Here, Livermore was allowed to create a trafficking offense and offender where none previously existed, to engage in negotiations the contents of which no independent witness can verify, and, finally, to determine the potential mandatory prison term and fine the Defendant will face by selecting the amount of drugs to be sold. Due process is offended on these facts.
Id. at 466 (citations omitted). Certainly, the conduct in the instant case is as offensive as the conduct in Anders. First, the agents and officers did not actively monitor Antar's repeated contacts with Nadeau nor did they prepare any notes on their contact with Antar. Nadeau had no criminal history and the officers acknowledged that they knew of no drug activity prior to his involvement in this case. Therefore, we hold that the law enforcement conduct in this case was so outrageous as to constitute a denial of appellant's due process rights. See Glosson, 462 So.2d at 1084.
We also hold that appellant sufficiently established subjective entrapment as a matter of law where no factual disputes existed as to the government's inducement of appellant and appellant's lack of predisposition to commit the offense of trafficking in cocaine. The Florida Supreme Court in Munoz v. State, 629 So.2d 90 (Fla.1993), held that the objective entrapment test set forth in Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), was eliminated by the enactment of section 777.201, Florida Statutes (1987), which created a subjective entrapment test. The subjective test is distinct from a due process objective evaluation of entrapment in that the emphasis shifts from the conduct of the law enforcement personnel to the predisposition of the perpetrator to commit the crime.
Under the subjective test, we must first determine whether an agent of the government induced the accused to commit the offense charged. The accused has the burden of proof pursuant to section 777.201 to establish this factor by a preponderance of *507 the evidence. The evidence was overwhelming in this case that Antar repeatedly induced Nadeau with threats and harassment. See, e.g., State v. Ramos, 632 So.2d 1078 (Fla. 3d DCA 1994) (holding that the defendant proved inducement by a preponderance of evidence where an informant contacted him over a dozen times in order to convince him to get involved).
If the first question is answered affirmatively, then the second question arises as to whether the accused was predisposed to commit the offense charged. The accused initially has the burden to establish lack of predisposition; however, as soon as evidence of no predisposition is established, the burden shifts to the prosecution to rebut this evidence beyond a reasonable doubt. In Munoz, the supreme court said:
[A]dmission of evidence of predisposition is limited to the extent it demonstrates predisposition on the part of the accused both prior to and independent of the government acts. Further, care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement....
... [W]e construe section 777.201 as requiring the question of predisposition to be submitted to a jury when factual issues are in dispute or when reasonable persons could draw different conclusions from the facts.
Id. at 99-100.
This case is distinct from another subjective entrapment case before this court, Fruetel v. State, 638 So.2d 966 (Fla. 4th DCA), rev. denied, 649 So.2d 233 (Fla.1994). In Fruetel, two co-defendants testified Fruetel had knowledge of the impending drug deal, she had $5,000 cash on her at the time of arrest and she personally tested the cocaine and spoke with great familiarity about the drug trade. In the instant case, Detective Shackoor conceded that Nadeau had little knowledge of the drug trade and Nadeau had no money to consummate the deal.
Thus, without Antar's contradictory testimony which the state did not present at trial and in the absence of a tape recording of his conversations with Nadeau, Nadeau presented the only evidence regarding his predisposition. In the absence of such rebuttal evidence, no factual issues were in dispute and the issue of entrapment should not have been submitted to the trier of fact. Under the circumstances of this case, we find that under the subjective test Nadeau was entrapped as a matter of law.
We find no merit in appellant's remaining arguments and accordingly reverse the trial court's order denying appellant's motion for judgment of acquittal. We instruct the trial court on remand to enter an order for appellant's discharge.
PARIENTE, J., and KROLL, KATHLEEN J., Associate Judge, concur.
GLICKSTEIN, J., dissents without opinion.