707 So.2d 808 (1998)
Nelson QUESADA, Appellant,
v.
STATE of Florida, Appellee.
No. 96-4235.
District Court of Appeal of Florida, Fourth District.
February 18, 1998.
*809 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
STONE, Chief Judge.
We affirm Appellant's conviction and sentence for trafficking in cocaine by delivery and delivery of cocaine. The primary issue is whether Appellant was entrapped as a matter of law.
In March of 1995, a confidential informant gave Quesada's name to narcotics detectives, listing him as a person involved in drug trafficking. The informant's involvement in this case was limited to telephone calls he made to Quesada while incarcerated on a pending second-degree murder charge. The officers instructed him on avoiding entrapment, and he testified that he did not receive a substantial assistance agreement from the state and expected nothing in return for the information or his testimony.
Norman Surface, a police narcotics officer, instructed the informant to arrange a meeting with Quesada for the purpose of negotiating a cocaine transaction. When the officer telephoned Quesada, Quesada recognized his name from his earlier phone conversation with the informant. They agreed to meet at a restaurant. At that meeting, Surface expressed his interest in purchasing kilos of cocaine and displayed eighteen thousand dollars in cash. Quesada acknowledged that he was actively involved in the cocaine trade, that he was not new to that type of business, and that he had once crash-landed a cocaine-laden airplane in Louisiana. Quesada and Surface agreed to communicate by telephone to arrange a transaction. He and Quesada spoke numerous times by telephone in the weeks following their meeting. However, the amount of the deal dwindled, and Surface refused Quesada's request to provide the money up front. Communications with Quesada temporarily ceased.
A year passed in which undercover officers had no contact with Quesada. In February of 1996, the informant called Surface and indicated that he was again in contact with Quesada and believed Quesada was still involved in the drug trade. According to Surface, he suggested that the informant arrange an introduction between Quesada and Michael Capo, a Latin undercover officer.
*810 The informant then placed numerous calls over an eight-month period to Quesada in an attempt to arrange a transaction between Quesada and Capo. When Capo eventually called Quesada and began communicating with him on his own, the informant's involvement in the drug transaction ended.
To arrange the first drug transaction, Capo and Quesada spoke about seven times from February 22, 1996 to the 29th. On that occasion, Capo purchased an ounce of cocaine from Quesada. Capo initiated contact with Quesada seventeen days after the first transaction, and they spoke several times on the telephone to arrange a second deal. Capo ultimately purchased another two ounces of cocaine. All of Capo's telephone conversations, as well as his two meetings with Quesada, were taped via a Unitel device.
Quesada argues that he was entrapped because the method employed by the police, using a confidential informant who made from twenty to thirty unmonitored calls to him, constituted "outrageous police conduct." See Munoz v. State, 629 So.2d 90, 98-99 (Fla.1993); Nadeau v. State, 683 So.2d 504 (Fla. 4th DCA 1995). In Nadeau, the court held that the officers' failure to actively monitor the informant's repeated calls to the defendant and their lack of prior knowledge of any drug activity on the part of the defendant constituted outrageous police conduct and denied the defendant his due process rights. Id. at 506.
Repeated calls alone do not necessitate a finding of entrapment. See Lusby v. State, 507 So.2d 611 (Fla. 4th DCA 1987); Gonzalez v. State, 525 So.2d 1005 (Fla. 3d DCA 1988); State v. Konces, 521 So.2d 313 (Fla. 3d DCA 1988). Moreover, the fact that the police have no direct knowledge of what was said during those conversations does not constitute outrageous police conduct. In Nadeau, the defendant testified that the informant made threats to himself and his family if he did not sell the drugs and had, years earlier, physically threatened him. 683 So.2d at 506. Here, Quesada admitted that no one forced him to sell the drugs and that the informant never threatened him. Quesada complained that he finally succumbed because the informant was "hounding" him and he wanted to "get him off my back." However, the fact that the informant cajoled Quesada into dealing with Capo does not require a finding of outrageous police conduct. See Gonzalez, 525 So.2d at 1006.
Quesada also claims the informant had an ulterior motive to entice Quesada into a deal because the informant faced a second-degree murder charge. We find that the fact that the first officer told the informant he would speak to the prosecutor on his behalf does not violate Quesada's due process rights. The informant was not acting under an agreement, and Surface testified that the informant did not seek any assistance:
It's my opinion that he's one of these types, he wants nothing in return. He has never taken a dime from us for information. He has specifically said that he does not want any assistance relative to his current charge from me.... There came an occasion when he presented this information to me sometime subsequent to that. I saidI had told him, Well, hey, you know, I appreciate the help, if there is anything I can do for you, I will talk to the prosecutor. And he specifically told me he didn't ... My statement to him in that regard was more off the cuff than anything in anticipation of his response that, no, you don't have to do that, I don't care, because, to this day, [the informant] maintains that he will be found innocent on his charge.
This remark was not a promise, and it cannot be said that these circumstances created a substantial likelihood of perjured testimony or entrapment. See State v. Petro, 592 So.2d 254, 254 (Fla. 2d DCA 1991) (holding that no due process violation occurred where the defendant was never paid for his assistance and made no agreement but recognized that his assistance "wouldn't hurt" his chances of getting a reduced federal sentence).
The totality of the circumstances support a conclusion that Quesada was not entrapped as a result of outrageous police conduct. The informant gave Quesada's name to the police as a person involved in drug activities before the investigation began, and Quesada himself admitted to Surface that he was actively involved in the cocaine trade. See Heydel v. State, 583 So.2d 1051 (Fla. 4th DCA 1991) (holding that the defendant was *811 not entrapped as a matter of law where the informant arranged deals with people he had already identified as being involved in the drug trade). After Capo made contact with Quesada, the informant had no further contact with Quesada in setting up the deal. See State v. Davis, 557 So.2d 588 (Fla. 5th DCA 1989) (holding that no due process violation occurred even though the informant had a substantial assistance agreement, as the officer met independently with the defendants and displayed the money). As to the other issue raised by Appellant, we deem error, if any, to be harmless.
Appellant also asserts that a departure sentence was improperly imposed. However, this court cannot address this issue because it has not been preserved for review. Section 924.051(3), Florida Statutes, and Florida Rule of Criminal Procedure 3.800(b), require defendants to preserve sentencing errors by a contemporaneous objection or a written motion to correct sentence within ten days after the rendition of the sentence. See Mason v. State, 698 So.2d 914 (Fla. 4th DCA 1997); Neal v. State, 688 So.2d 392 (Fla. 1st DCA), rev. denied, 698 So.2d 543 (Fla.1997). The failure to file contemporaneous written reasons when imposing a departure sentence is not fundamental error. Neal, 688 So.2d at 396.
Therefore, as to all issues raised, the judgment and sentence are affirmed.
GUNTHER, J., and PARIENTE, BARBARA J., Associate Judge, concur.