737 So.2d 1108 (1999)
Kim SOOHOO, Appellant,
v.
STATE of Florida, Appellee.
No. 97-3891.
District Court of Appeal of Florida, Fourth District.
May 19, 1999.
Robert L. Bogen of the Law Offices of Robert L. Bogen, Boca Raton, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Appellant, Kim Soohoo, was tried by jury, convicted of trafficking in cocaine, and sentenced to fifteen years in prison. We reverse because we find that the trial court should have granted Soohoo's motion for judgment of acquittal based upon entrapment due to egregious conduct on the part of the government's confidential informant.
Soohoo was arrested in the parking lot of the Incredible Universe, a retail store in Broward County, when he met confidential informant Michael Martinez for the prearranged purpose of purchasing two kilograms of cocaine. Martinez, facing a lengthy sentence in California on federal drug charges, agreed with federal authorities to act as a cooperating defendant by facilitating drug deals in order to reduce his sentence. According to Martinez, he recalled that on two occasions, approximately a year earlier in New York, he was present when Kim Soohoo purchased cocaine from a mutual acquaintance. In hopes of setting up a fresh drug deal, Martinez called Soohoo in New York. Martinez testified that he first offered to sell Soohoo five kilograms of cocaine because that was the threshold quantity to elevate a state drug prosecution to a federal prosecution. Soohoo declined to purchase that amount. Martinez testified that as an incentive to set up the deal, he offered to assist Soohoo in selling the drugs by telling him that "if he was to take the five, if he was to purchase five kilograms, that I would help him distribute it in New York through people that I knew down there." Soohoo still declined the offer.
Martinez contacted Soohoo again, this time with a proposal for a smaller quantity *1109 of cocaine at $20,000 per kilogram. Even though Martinez was reporting to a supervising FBI agent (Special Agent Fong), Martinez was given autonomy to arrange the details of the transaction himself. Martinez preferred working this way because he knew the "lingo" used by drug dealers. According to Martinez:
[T]hey're [the police] not really street-smart enough to kind of put those things together.... That's what I did for a living, you know. There is certain things you can do and you can't do. If you're a cop, there is a certain way you can't approach a drug dealer without him not knowing or knowing that you are a cop.
When Soohoo expressed interest in one kilogram, Martinez offered a second kilogram on credit as an incentive for Soohoo to buy two kilograms instead of just one:
[Martinez:] Well he was buying a kilo. I wanted to make sure he didn't steer away from that as he steered away from five kilos.... I wanted to keep him on the hook.... I gave him a sales pitch. That's what I do.
Soohoo and Martinez arranged a transfer in Florida. Martinez told Soohoo that he needed $1,000 in advance to cover his travel expenses from California to Florida. Soohoo wired Martinez the requested $1,000, and the two met in Florida, where the transfer and the arrest took place.
Special Agent Fong testified that he counseled Martinez regarding entrapment and instructed him that the FBI would investigate individuals before Martinez could pursue a sting operation. Nevertheless, Fong knew that Martinez was pursuing Soohoo but never conducted an independent evaluation of Soohoo. Although Martinez testified that he kept Fong informed of his interactions with Soohoo and that he played Fong taped conversations between him and Soohoo, Fong testified that he had neither knowledge of the taped conversations nor specific information regarding the deal, except for the fact that it was going to take place in Florida. Shortly before the deal was to be consummated in Florida, Fong turned the supervision of this case over to a Florida agent.
Appellant argues that the trial court erred in denying his motion for judgment of acquittal on the ground of entrapment under both the subjective standard, which analyzes the accused's predisposition to commit the charged offense, and the objective standard, which addresses the conduct of law enforcement officers. We find merit in appellant's argument concerning the objective standard of entrapment.

Entrapment in Florida
A thorough analysis of the evolvement of the entrapment defense under both federal and Florida law is set forth in Munoz v. State, 629 So.2d 90 (Fla.1993). During its embryotic stages, Florida law governing the entrapment defense amounted to a tug-of-war between the legislative and judicial branches. While the United States Supreme Court has always embraced what has been described as the "subjective standard" of entrapment, the Florida Supreme Court envisioned an "objective standard." Id. at 91-96; Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). In 1987, however, the Florida legislature enacted section 777.201, Florida Statutes, specifically rejecting the objective standard and adopting a subjective standard of entrapment. Subsequently, when called upon to address section 777.201, the Florida Supreme Court noted that the legislature had no authority to overrule the court's earlier decisions regarding entrapment under the objective standard, where the accused's due process rights were violated under article I, section 9, of the Florida Constitution. See Munoz, 629 So.2d at 98-99. Thus, as it stands today, Florida courts embrace both the subjective and objective standards of entrapment. See id. at 101.

The objective standard of entrapment
In Munoz, our supreme court, while retreating from the mechanical test for objective *1110 entrapment announced in Cruz v. State,[1] reaffirmed the continued viability of prior entrapment cases which had been decided using the objective due process analysis:
[W]e have determined, under the circumstances in [State v.] Glosson[, 462 So.2d 1082 (Fla.1985)(concluding that the trial court properly dismissed charges against an accused whose due process rights were violated because the sheriff paid an informant a contingency fee for cooperation and testimony) ], that the conduct of law enforcement agents violated the due process clause of the Florida Constitution. We recently reached a similar conclusion in State v. Williams, 623 So.2d 462 (Fla.1993). In Williams, we relied on Glosson in finding that the police conduct violated the defendant's due process rights under article I, section 9, regardless of the defendant's predisposition. This was because the conduct engaged in by law enforcement agents, i.e., the manufacture of crack for sale within 1000 feet of a school, was illegal. In making our determination, we noted that defining the limits of due process is difficult because due process is not a technical, fixed concept; rather, it is a general principle of law that prohibits prosecutions brought about by methods offending one's sense of justice. Further, although we stated that we are not unmindful of the problems faced by law enforcement agents in combating crime, we emphasized that certain conduct would not be tolerated in light of the due process considerations mandated by our constitution. "While we must not tie law enforcement's hands in combating crime, there are instances where law enforcement's conduct cannot be countenanced and the courts will not permit the government to invoke the judicial process to obtain a conviction." Williams, at 465. Because the legislature cannot abrogate an accused's due process rights, section 777.201 is inapplicable whenever a judge determines as a matter of law that law enforcement personnel have violated an accused's due process rights.
629 So.2d at 98.
State v. Anders, 596 So.2d 463 (Fla. 4th DCA 1992), is analogous to the instant case. In that case, Livermore, an informant, agreed to help procure arrests of individuals for drug possession in exchange for a lessened sentence. See 596 So.2d at 463. This court found entrapment under the objective due process argument because law enforcement officials did not monitor the informant's activities, did not instruct him on how to avoid entrapment, allowed the informant to set up the reverse-sting operation, gave the informant a time limit in which to procure arrests, and did not ascertain whether Anders had a criminal history. See id. The court concluded:
[D]ue process of law will not tolerate the law enforcement techniques employed in this case. Sending an untrained informant out into the community, with no control, no supervision and not one word of guidance or limitation about whom he may approach or what he should do was an invitation to trouble.... Here, Livermore was allowed to create a trafficking offense and offender where none previously existed, to engage in negotiations the contents of which no independent witness can verify, and, finally, to determine the potential mandatory prison term and fine the Defendant will face by selecting the amount of drugs to be sold. Due process is offended on these facts.
Id. at 465-66 (citation omitted).
The principle of due process imposes upon the courts "the responsibility to conduct `an exercise of judgment upon the whole course of the proceedings in *1111 order to ascertain whether they offend [the] canons of decency and fairness....'" State v. Williams, 623 So.2d at 465 (quoting Malinski v. New York, 324 U.S. 401, 416-17, 65 S.Ct. 781, 89 L.Ed. 1029 (1945)). Viewing the instant record as a whole and looking to all the circumstances surrounding this sting operation, we conclude, as in Anders, that the conduct of confidential informant Martinez, acting on behalf of law enforcement, offends canons of decency and fairness. Perhaps most egregious and offensive in this case was Martinez's offer to help Soohoo distribute the product if he were to purchase five kilos of cocaine and his subsequent offer to give Soohoo a second kilo on credit if he were to purchase one kilo. Because Martinez was working undercover as an agent of law enforcement, this consignment arrangement for the sale of drugs represents governmental conduct which this court cannot condone.
Additionally, although there was a bit more supervision of Martinez than there was of the informant in Anders, Martinez was still given too much leeway to independently structure this transaction. Had Martinez been more closely monitored, the missteps taken might never have occurred. Not only did the government fail to investigate Martinez's claims regarding Soohoo's prior drug-related activity, but the government failed to closely monitor Martinez's dealings with Soohoo after he became a target for this operation. Agent Fong was essentially unaware of the details of the transaction and never listened to any taped discussions between Soohoo and Martinez.
We find that the government actions in this case constitute misconduct in violation of the defendant's rights under article I, section 9 of the Florida Constitution, regardless of any predisposition of Soohoo to commit the alleged offense. See State v. Williams, 623 So.2d at 462; State v. Glosson, 462 So.2d at 1084 (citing United States v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)). Hence, we need not reach appellant's contention that, pursuant to section 777.201, the State did not rebut, beyond a reasonable doubt, his evidence of lack of predisposition to engage in the subject drug transaction.
Accordingly, appellant's judgment of conviction and sentence are REVERSED.
DELL and HAZOURI, JJ., concur.
NOTES
[1] Under that test,

Entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.
465 So.2d at 522.