STONE, J.
We affirm Cline’s conviction of trafficking in cocaine. Cline pled nolo contendere when his motion to dismiss and motion to suppress were denied, reserving his right to appeal the rulings on both motions.
We address objective entrapment due process issues arising out of the involvement of an untested and unmonitored informant, who served as a middleman during a drug transaction and who gave authorities the information leading to Cline’s arrest.
At the motion to suppress hearing, Deputy Chase testified he had previously arrested the informant, Frank Petrone, on cocaine charges. The deputy spoke with Petrone on occasion following the arrest. Their discussions involved generalities concerning avenues of narcotics investigation. He had also referred Petrone to Broward County authorities, as Petrone’s source, Jimmy, was in Broward County.
The deputy recounted learning that Pe-trone knew Cline from being incarcerated together on drug charges. After Cline approached Petrone regarding drug purchases, Petrone introduced Cline to “Jimmy,” and numerous transactions with Jimmy followed.
According to Chase, Petrone told him that Cline would call when he wanted to “go to lunch” with Jimmy:
He told me ordinarily what happens, you know, when he means he is coming down for lunch, it means he is coming down to purchase ... and then Mr. Cline would proceed with the drugs up to, I believe, Brevard County, Cocoa Beach, where he lives.
On the day of this offense, Petrone called Deputy Chase and told him he was on his way down to join Cline in Broward County and was going to “go to lunch.” Petrone told Chase that once the transaction took place, Cline would return home on the turnpike.
Chase advised Petrone to call him “if, in fact, number one, a deal had taken place, *963 and number two, to you know stay behind the vehicle.” He also told Petrone to call him one way or the other to let him know what happened. After speaking -with Pe-trone, Chase notified his supervisor and, at that point, there were “a couple of cars” put on the entrance and exit turnpike ramps up by Southern Boulevard and Okeechobee. When he heard from Petrone again, Petrone gave him his location. Pe-trone described the Cline vehicle and its tag number, informing Chase that Cline was the driver and Mrs. Cline was the passenger. Chase told Petrone to “stay with him somewhat so we can get out behind him.... So he followed him up to Southern Boulevard. I told him he could go because at that point we observed the vehicle and we were with him.”
Chase testified that he had never discussed with Petrone any plan to set it up so that Cline would be arrested on his way back from a Broward buy. Chase said that he did not know if Petrone was acting as a broker on the day in question and did not know if Petrone had pocketed any money as a result of the deal between Cline and Jimmy. As the transaction was not planned in advance, Chase had not told Petrone to come in and be wired, did not instruct Petrone to go to the police department to be debriefed and searched for money or narcotics, or make any other arrangements for what occurred.
Chase acknowledged that as a result of Petrone’s cooperation (both in the instant case and in a subsequent investigation), he recommended, and Petrone received, some benefit to his case, and his co-defendant’s case was nolle prossed.
Cline admitted that these transactions occurred once every four to six months over a four-year span. Cline’s position was that Petrone was his narcotics supplier, Jimmy was Petrone’s source, and it was their normal procedure for Petrone to get out of Cline’s ear and go to Jimmy’s car to get the cocaine, bring it to Cline’s car, and Cline would pay through Petrone. Cline said Petrone charged Cline $1,100 an ounce and that $100 of this was kept by Petrone. Cline claimed that on the date of the incident, Petrone had called him and offered to front one-half of the money for twelve ounces of cocaine, to be repaid by Cline at a later date. Cline stated Petrone never wanted Cline to deal directly with Jimmy because then Petrone would be cut out of the money.
In denying the motion to dismiss and motion to suppress, the trial court found and concluded that:
With regard to the objective analysis of entrapment on due process grounds, when I look at the conduct of law enforcement here, I don’t find anything that strikes me as so egregious as set forth in the case law that I would find it offends a sense of justice, and I do not find that that is a sufficient argument that has been placed before the Court.
In Munoz v. State, 629 So.2d 90 (Fla.1993), the supreme court found that section 777.201, Florida Statutes,[1] eliminated the objective entrapment test set forth in Cruz v. State, 465 So.2d 516 (Fla.1985). *964 The supreme court, in Munoz, found that although
the subjective test set forth in section 777.201 is the test to be applied on the issue of entrapment in the absence of egregious law enforcement conduct.... [I]n the presence of egregious law enforcement conduct, an entrapment defense is to be evaluated under the due process provision of article I, section 9, of the Florida Constitution as in Glosson and Williams.[2]
In Glosson, 462 So.2d at 1085, the court found paying an unsupervised informant ten percent of all resulting civil forfeitures from the informant’s investigations constituted a due process violation. The court stated:
The informant here had an enormous financial incentive not only to make criminal eases, but also to color his testimony or even commit perjury in pursuit of the contingent fee. The due process rights of all citizens require us to forbid criminal prosecutions based upon the testimony of vital state witnesses who have what amounts to a financial stake in criminal convictions.
In Williams, 623 So.2d at 463, the court also found a due process violation where the sheriffs department manufactured crack cocaine for use in a reverse sting operation.
Our court has also found objective entrapment based upon certain factual scenarios, all of which we deem distinguishable. In Madera v. State, 943 So.2d 960, 961-62 (Fla. 4th DCA 2006), we found a due process violation where an informant made promises of an intimate relationship if the defendant would assist her in obtaining drugs, the informant indicated the drugs were needed to cope with cancer, and the defendant had no criminal history. In Farley v. State, 848 So.2d 393, 398 (Fla. 4th DCA 2003), we found objective entrapment present where a task force manufactured videos featuring child pornography, and Farley was not involved in any previously known criminal activity.
We have also considered Soohoo v. State, 737 So.2d 1108 (Fla. 4th DCA 1999), and State v. Anders, 596 So.2d 463 (Fla. 4th DCA 1992), relied on by Cline.
In Soohoo, 737 So.2d at 1108, an informant facing a lengthy sentence entered into an agreement with federal officials to facilitate drug deals in exchange for a reduction in his impending sentence. Our concern in that case focused on the methods used by the informant and the lack of supervision. However, it is clear that we deemed Soohoo to be acting as an agent of the authorities and that his conduct was deemed unacceptable government conduct.
In Anders, 596 So.2d at 464, the informant entered into a substantial assistance agreement with the state and agreed to set up persons leading to arrests in exchange for a reduced sentence. He was told by the state and the court that he must procure the arrests prior to a deadline. Id. There, the agent knew there were ongoing communications that should be monitored and the informant was being used to instigate a sting without being monitored or instructed. In Anders, we recognized that the informant was acting as an undercover agent of law enforcement, and his conduct in pushing the defendant into the transaction was deemed governmental conduct which could not be condoned.
Other cases have rejected the objective entrapment defense. In State v. Lopez, 908 So.2d 484, 485 (Fla. 4th DCA 2005) (citing State v. Figuereo, 761 So.2d 1252 (Fla. 3d DCA 2000)), we agreed with the state “that the alleged failure to properly *965 supervise the confidential informant, standing alone, did not amount to a due process violation and establish objective entrapment.” However, we did not detail the facts of the case in that opinion. In Quesada v. State, 707 So.2d 808 (Fla. 4th DCA 1998), the informant set up the defendant with an undercover police officer. We rejected the defendant’s contention that, because the informant made twenty to thirty unmonitored calls to the defendant, the police had engaged in outrageous conduct, finding repeated phone calls alone do not necessitate entrapment as a matter of law. Id. Further, the police had no direct knowledge of those conversations. In Heydel v. State, 583 So.2d 1051, 1054 (Fla. 4th DCA 1991), distinguishing Glosson, we found no due process violation where a detective closely supervised the informant.
The circumstances, here, differ from those cases where objective entrapment was found. This is not a case where the defendant had no prior criminal history or involvement with drugs; this is not a case where the defendant was coerced into the transaction by an unmonitored informant who was working off of a substantial assistance agreement and/or working under a plan in which his designated role was to buy or sell drugs from or to the defendant; and this is not a case where the authorities “fronted” the transaction for the defendant’s purchase.
In this case, we do not find outrageous behavior by the deputy. The informant did not seek out vulnerable subjects in the community at large to induce them to commit a crime. Rather, he simply communicated with a person with a known criminal history who had regularly purchased large amounts of cocaine through him on numerous occasions. The transaction did not even involve the authorities and was not set up at their direction. Had the informant not been able to contact the deputy on his way to the buy, it would have occurred in any event, as it had in the past. Also, the defendant was not pushed, threatened, or tricked into agreeing to the transaction, notwithstanding Cline’s claim that by the informant’s “fronting” part of the buy, he was encouraged to purchase double the amount of his previous buys.
We deem Mendel v. State, 903 So.2d 1027 (Fla. 4th DCA 2005) instructive. There, following the confidential informant’s arrest, he was offered the opportunity to perform substantial assistance for the state. Id. at 1028. Before entering into the agreement, he was sent into the community as a confidential informant (Cl). Id. Wearing a listening device, the Cl met with the defendant to discuss a transaction. Id. The detective monitored the meeting. Id. The Cl and the defendant reached an agreement wherein the Cl would purchase Ecstasy from the defendant. Id. The Cl told the detective the defendant would arrive at an agreed location on a specific date in a vehicle, and with a companion described, after picking up the drugs from a location in Miami. Id. On that date, the detectives conducted surveillance. Id. They observed the defendant entering a vehicle with a female companion fitting the description and driving with her to a residential neighborhood in Dade County. Id. The Cl made a three-way call to the defendant confirming he had the drugs. Id. The defendant told the Cl everything was fine and he was on his way back. Upon the defendant’s return, the detectives stopped the SUV. Id.
The defendant argued that his due process rights were violated by law enforcement’s failure to verify the defendant’s prior drug involvement before sending the untrained Cl into the community without proper monitoring and prior to the Cl entering into the substantial assistance *966 agreement. Id. at 1029. The court recognized that, unlike in Nadeau v. State, 683 So.2d 504 (Fla. 4th DCA 1995), “the defendant was not harassed or threatened. Although the defendant testified he felt the Cl was ‘pushing’ him, he admitted the motivating factor was his financial situation .... The defendant had prior felonies, and the Cl had been instructed to approach only persons he had previously had drug business with or who were known to deal in drugs. Under these facts, there was no due process violation.” Id.
In summary, the transaction in this case was a repeat of deals that had occurred numerous times previously, the defendant was willingly involved, there was no significant change from prior behavior, the Cl was not acting under a substantial assistance agreement, but was simply hoping to benefit on his charges if he helped the deputy make a bust. There was no involvement by the deputy in setting up any aspect of the transaction other than to arrange for identifying and stopping the car; the Cl was acting on his own, he was not acting as an agent except in following the defendant’s car after notifying the deputy. Although it might be argued that due to the informant’s alleged willingness to front part of the deal, the defendant bought twice as much cocaine as he otherwise would have, this factor would remain for the jury to consider in weighing an asserted defense of subjective entrapment and in determining the degree of the offense.
As to all other issues, we also find no reversible error or abuse of discretion.
Therefore, the judgment is affirmed.
MAY, J., concurs.
FARMER, J., concurs in result only.

. Section 777.201(1), Florida Statutes, provides:
(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

. State v. Glosson, 462 So.2d 1082 (Fla.1985); State v. Williams, 623 So.2d 462 (Fla.1993).