# Third District Court of Appeal

## State of Florida

Opinion filed January 4, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2622
Lower Tribunal No. 08-41616
_____

**Joaquin D. Blanco,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal under Florida Rule of Appellate Procedure 9.141(b)(2) from the Circuit Court for Miami-Dade County, Samantha Ruiz-Cohen, Judge.

Joaquin D. Blanco, in proper person.

Pamela Jo Bondi, Attorney General, and Magaly Rodriguez, Assistant Attorney General, for appellee.

Before SUAREZ, C.J., and FERNANDEZ and LOGUE, JJ.

LOGUE, J.

Joaquin Blanco appeals the trial court's denial of his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. We affirm.

## FACTS AND PROCEDURAL HISTORY

Our prior opinion upholding Blanco's conviction summarized the facts underlying his conviction as follows:

> Blanco was arrested and charged with trafficking when he sold crystal methamphetamine to an undercover police officer. Blanco claimed he was induced into making the sale by Jesus Felizzula, a State confidential informant who Blanco met at an HIV facility. Prior to trial, the State moved to exclude any reference to Blanco's HIV condition or the details of Felizzula's agreement with the State. The trial court granted the motion. Defense counsel's request to voir dire the jury panel regarding their opinions on entrapment was denied. Thereafter, defense counsel accepted the jury without renewing his objection to the restricted voir dire.
>
> At trial, Blanco revealed that he met Felizzula while attending a facility for persons with HIV/AIDS where Felizzula served as Blanco's mentor. The two men later became lovers. At the time, Felizzula, a convicted drug trafficker, was under a plea agreement which required him to produce trafficking level cases for the State. Blanco testified that he knew that Felizzula took drugs, and he was very much against it. Blanco did not take illegal drugs, and had never before or since this occurrence sold drugs.
>
> At one point in their relationship, Blanco, who was a real estate agent, sold Felizzula's home. Felizzula was not satisfied with the amount he received from the sale. Subsequently, Felizzula moved out of the state, but called Blanco asking for his assistance in arranging a drug deal in Miami. Felizzula insisted that Blanco should do this to prove his love and to make amends for the money lost on Felizzula's home. After repeated refusals, Blanco eventually relented and agreed to facilitate the sale.

Felizzula contacted his police handler, who referred him to undercover narcotics agent Chris Villano. Felizzula informed Villano that Blanco would sell him five eight-balls of crystal methamphetamine. Villano's telephone call to Blanco was recorded and played to the jury. The two men began with a political discussion and then talked about the drug deal using coded language. Villano explained that conversations of this type usually used a code to avoid detection. Blanco testified that because he was unfamiliar with the code being used, he simultaneously received instructions from Felizzula online. The telephone call was followed by an exchange of telephonic text messages through which Blanco and Villano agreed to meet. Blanco testified that prior to meeting with Villano, Felizzula had someone deliver a white envelope to him. When he later met with Villano, Blanco turned over the envelope in exchange for the amount of cash previously agreed upon. The contraband was confiscated and Blanco was immediately arrested. A subsequent search of Blanco's home and car revealed no other drugs. The jury rejected Blanco's entrapment defense and returned a guilty verdict.

Blanco v. State, 89 So. 3d 933, 935-36 (Fla. 3d DCA 2012).

After his conviction was upheld on direct appeal, Blanco filed a post-conviction motion in the trial court alleging ineffective assistance of trial counsel. Among other claims, he argued that his trial counsel was ineffective in failing to move to dismiss based on his entrapment defense. The trial court disagreed. It concluded that the failure to move to dismiss did not reflect ineffective assistance of counsel because the question of whether Blanco was predisposed to commit the crime was a question for the jury given the facts of this case. The trial court denied Blanco's post-conviction motion and this appeal followed.[1]

---

[1] In addition to Blanco's argument regarding predisposition, the trial court rejected seven other claims he raised in his post-conviction motion. We affirm the trial court's rulings on those claims without further discussion.

# ANALYSIS

On appeal, Blanco argues that the trial court erred in concluding that the jury could rely upon his use of drug-trade jargon during the drug transaction to prove predisposition. He contends that these statements cannot form a basis for a finding of predisposition because the statements were made after the government induced him to traffic in drugs. He essentially asks this court to fashion a rule that a defendant's conduct after the government induced him to commit an offense is never relevant to prove predisposition. This proposed rule paints with too broad a brush. While "care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement," Munoz v. State, 629 So. 2d 90, 99 (Fla. 1993), post-inducement acts and statements can, in appropriate circumstances, be relevant to prove that the defendant was predisposed to commit the crime before he was induced to do so. This case is one such example.

Florida law recognizes two distinct entrapment defenses: objective entrapment and subjective entrapment. Objective entrapment focuses on law enforcement's conduct and whether the conduct amounts to a due process violation under article I, section 9, of the Florida Constitution. Munoz, 629 So. 2d at 98-99. This inquiry turns on whether "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." State v. Glosson, 462 So. 2d

4

1082, 1084 (Fla. 1985) (citation omitted) (holding an agreement to pay an informant a contingent fee conditioned on his cooperation and testimony in criminal prosecutions violated constitutional due process). A due process violation occurs regardless of a defendant's predisposition to commit the crime. Id.

In contrast, subjective entrapment focuses on whether the defendant was predisposed to commit the crime. Jones v. State, 114 So. 3d 1123, 1126 (Fla. 1st DCA 2013). This inquiry turns on whether the defendant was an "unwary innocent" who had no predisposition to commit the crime but was lured into doing so, or, instead, an "unwary criminal" who readily availed himself or herself of the opportunity to commit the crime. Id. (quoting Mathews v. United States, 485 U.S. 58, 63 (1988)). Only the subjective entrapment defense is implicated in this appeal.

The Florida legislature codified the elements of the subjective entrapment defense in section 777.201, Florida Statutes (2010). It provides:

(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

(2) A person prosecuted for a crime shall be acquitted if the person proves by a preponderance of the evidence that his or her criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.

Id.[2]

In analyzing this statute, the Florida Supreme Court directed courts to consider three questions. Munoz, 629 So. 2d at 99-100. First, did an agent of the government induce the defendant to commit the offense? Id. at 99. This step places the burden on the defendant to prove inducement by a preponderance of the evidence. Id.

Second, was the defendant predisposed to commit the offense? Id. This step places the initial burden on the defendant to establish a lack of predisposition. Id. If the defendant produces evidence of a lack of predisposition, the burden then shifts to the prosecution to rebut this evidence by proof beyond a reasonable doubt. Id. "The state may prove predisposition with evidence of the defendant's prior criminal activities, his reputation for such activities, reasonable suspicion of his involvement in such activity, or his ready acquiescence in the commission of the crime." Jones, 114 So. 3d at 1126 (quotation and citation omitted). "However, admission of evidence of predisposition is limited to the extent it demonstrates

---

[2] Section 777.201 may not, by its express terms, limit its application to subjective entrapment, but the Florida Supreme Court held that it does not govern the objective entrapment defense: "in the presence of egregious law enforcement conduct, an entrapment defense is to be evaluated under the due process provision of article I, section 9, of the Florida Constitution." Munoz, 629 So. 2d at 99. This statement reflects the principle that the legislature cannot abrogate a defendant's due process rights. Id. at 98.

predisposition on the part of the accused both prior to and independent of the government acts." Munoz, 629 So. 2d at 99.[3]

Third, should the question of subjective entrapment be submitted to the jury? Id. at 101. Generally, this defense should be submitted to the jury because the issues of inducement and predisposition "ordinarily present questions of disputed facts to be submitted to the jury as the trier of fact." Id. at 100. However, there are cases where the trial court can rule that the defendant was entrapped as a matter of law. This occurs when "the factual circumstances of a case are not in dispute," "the accused establishes that the government induced the accused to commit the offense charged," and "the State is unable to demonstrate sufficient evidence of predisposition prior to and independent of the government conduct at issue." Id.[4]

---

[3] If there is no evidence of inducement or a lack of predisposition, a defendant is not entitled to a jury instruction on subjective entrapment. See, e.g., Davis v. State, 937 So. 2d 300, 303-04 (Fla. 4th DCA 2006).

[4] Although section 777.201 arguably requires the issue of entrapment to be submitted to the jury, the Florida Supreme Court rejected such an interpretation of the statute:

> Under the constitution of this state, juries, as the finders of fact, decide factually disputed issues and judges apply the law to the facts as those facts are found by the jury. To construe section 777.201 as mandating that the issue of entrapment is to be submitted to a jury for determination as a matter of law would result in an unconstitutional construction that would violate article I, section 9, of the Florida Constitution.

Munoz, 629 So. 2d at 101.

In this case, Blanco's testimony established a prima facie case of inducement. See Jimenez v. State, 993 So. 2d 553, 556 (Fla. 2d DCA 2008) (holding, under similar circumstances, that the defendant demonstrated inducement); State v. Henderson, 955 So. 2d 1193, 1195 (Fla. 4th DCA 2007) ("Inducement includes persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.") (emphasis added) (quotation and citation omitted). He also provided evidence of a lack of predisposition based on his testimony that he had no criminal record or history of distributing drugs. See Jimenez, 993 So. 2d at 556 ("[The defendant] . . . sufficiently alleged that he had no predisposition to commit the crime by claiming that he has no prior criminal history and 'no history whatsoever of engaging in drug distribution.'").

Because Blanco established a prima facie case of inducement, the burden shifted to the State to present sufficient evidence of predisposition. Citing to Munoz, Blanco argues that his use of drug-trade jargon during the drug transaction is irrelevant to prove predisposition because it occurred after the government induced him to commit the offense. He primarily relies on the following passage from the Munoz opinion: "admission of evidence of predisposition is limited to the extent it demonstrates predisposition on the part of the accused both prior to and independent of the government acts." 629 So. 2d at 99.

8

Blanco is misreading Munoz on this point. The passage of Munoz he cites does not categorically bar consideration of post-inducement conduct when deciding whether the defendant was predisposed to commit the crime. Rather, the passage indicates that post-inducement evidence can be admissible if it tends to show that the defendant was predisposed to commit the crime before the government induced him. In other words, the evidence may arise post-inducement, but it must tend to establish that the defendant was predisposed to commit the crime before the inducement.

Other passages in Munoz support this interpretation. The Court explained that "[i]n rebutting the defendant's evidence of lack of predisposition, the prosecution may make 'an appropriate and searching inquiry' into the conduct of the accused." Id. at 99. It further stated that "care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement." Id. Requiring care is not the same as adopting a blanket exclusion.

Consider the following hypothetical: at a post-inducement drug deal, the defendant is recorded as saying, "I am glad we met last week and agreed to do business. I have bought this drug fifty times over the last two years from many different dealers, but never before did I get such good product at such a reasonable price." This statement obviously tends to show that the defendant was predisposed

to buy drugs prior to the inducement: it reflects that the defendant was regularly buying drugs for years before the inducement.

Blanco's argument to the contrary, that evidence arising after the inducement must be excluded because it is per se irrelevant to prove predisposition to commit the crime before the inducement, has been uniformly rejected by the courts that have considered it.

In Jones, the First District rejected the argument that Munoz requires a blanket exclusion of post-inducement evidence. In that case, the State charged the defendant with drug trafficking after he sold hydrocodone pills to an undercover police officer. Jones, 114 So. 3d at 1125. The defendant raised a subjective entrapment defense, and, in response, the State sought to admit a video into evidence which depicted a different, uncharged incident of a drug transaction involving the defendant. The defendant sought to exclude this evidence on the basis that the transaction occurred after an officer induced him to purchase drugs. The trial court disagreed with the defendant and admitted the video as rebuttal evidence. Id. On appeal, the First District affirmed the defendant's conviction and rejected his contention that the State may rely only on "pre-inducement" conduct to establish predisposition. Id. at 1126-27. In doing so, the First District cited to Munoz:

> Appellant presents no legal authority to support his contention that the State may only rely on "pre-inducement" criminal conduct to establish

predisposition. On the other hand, the supreme court in <u>Munoz</u> indicated that post-inducement acts <u>can</u> be relevant to proving predisposition. Discussing methods the prosecution may employ to rebut an entrapment claim, the court stated, "care must be taken in establishing the predisposition of a defendant <u>based on conduct that results from the inducement</u>." <u>Munoz</u>, 629 So. 2d at 99 (emphasis added). Arguably dictum, this statement nonetheless refutes Appellant's assertion that criminal acts undertaken after alleged inducement by law enforcement are categorically irrelevant to prove predisposition.

<u>Id.</u> at 1126.

Moreover, this court's earlier opinion upholding Blanco's conviction demonstrates that post-inducement conduct can be relevant to prove predisposition. Among other issues raised on appeal, this court had to decide whether the portion of the taped conversation between Blanco and the undercover officer discussing political issues was relevant to prove predisposition. <u>Blanco</u>, 89 So. 3d at 936. The political discussion had immediately preceded Blanco's use of drug-trade jargon to complete the drug deal. <u>Id.</u> at 935. Blanco argued that the political discussion was irrelevant and highly prejudicial. The State responded by asserting that the evidence "tended to rebut Blanco's portrayal of his character as one easily influenced." <u>Id.</u> at 936. This court agreed with the State that the evidence was relevant and admissible, citing to, among other cases, <u>Munoz</u>. <u>Id.</u> at 937.[5]

---

[5] Arguably, this court's holding regarding whether the political discussion was relevant to prove predisposition resolved the question here regarding whether post-inducement statements can be relevant to prove predisposition. The State, however, did not raise a "law of the case" argument in the trial court or on appeal. We therefore decline to reach this issue.

In addition, the Fifth District has held that the post-inducement use of drug-trade jargon is relevant to prove predisposition. In <u>Sallomi v. State</u>, 629 So. 2d 969 (Fla. 5th DCA 1993), the State charged the defendant with possessing and selling cocaine. At trial, the defendant claimed entrapment. The jury rejected his defense and convicted him of the charged offenses. On appeal, the Fifth District held that sufficient evidence supported a finding of predisposition, including the defendant's recorded references to his supplier, the presence of cocaine in the trunk of his car, and his demand for cash up front for an "eight ball" (drug-trade jargon referring to an eighth of an ounce of cocaine). <u>Id.</u> at 970.

As <u>Munoz</u>, <u>Jones</u>, and <u>Sallomi</u> recognize, a defendant's use of drug-trade jargon at the post-inducement drug transaction can form the basis of a jury's finding that the defendant was an experienced and willing drug dealer. Here, the jury heard Blanco's testimony and the recording of his conversation with the undercover officer. It had the opportunity to determine whether he sounded like an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to commit the crime. It is within the province of the jury to do so. <u>See</u> <u>Munoz</u>, 629 So. 2d at 100. ("[W]e construe section 777.201 as requiring the question of predisposition to be submitted to a jury when factual issues are in dispute or when reasonable persons could draw different conclusions from the facts."); <u>Vanhoosen v. State</u>, 469 So. 2d 230, 231 (Fla. 1st DCA 1985) ("[Florida

12

Rule of Criminal Procedure] 3.190(c)(4) motions should be granted rarely since factual disputes are to be resolved by the jury.").

For these reasons, we reject Blanco's contention that a defendant's post-inducement use of drug-trade jargon during a drug transaction is per se irrelevant to the issue of whether the defendant was predisposed to traffic in drugs.

Affirmed.

FERNANDEZ, J., concurs.

SUAREZ, C.J. (dissenting).

I respectfully dissent.  The record in this case is completely void of any evidence that Blanco was predisposed to commit the crime in question.  Without that evidence, the elements of <u>Munoz v. State</u>, 629 So. 2d 90, 99 (Fla. 1993) are not met.  Therefore, as a matter of law, this is a valid case of entrapment and the issue should have been ruled on by the trial judge and should never have gone to the jury.

Despite its correct recitation of the law of entrapment, the majority relies on certain language – used by Blanco only during the transaction and only after inducement by the state to enter into a single drug transaction – as **the sole** evidence that Blanco was allegedly predisposed to commit the offence.  "This view overlooks even the common connotation of the word 'pre-disposition.'  The prefix pre- indicates that the disposition must exist before the first contact with the government."  <u>Farley v. State</u>, 848 So. 2d 393, 396 (Fla. 4th DCA 2003). Moreover, the majority fails to acknowledge that, unlike the defendants in the cases it relies upon, Blanco had no prior connection to any criminal activity.  The majority's conclusion in this case is inconsistent not only with the cases it cites, but with due process.  <u>Soohoo v. State</u>, 737 So. 2d 1108, 1111 (Fla. 4th DCA 1999). As discussed below, other courts which have addressed entrapment claims by

14

defendants who were situated similarly to Blanco, have found entrapment as a matter of law, reversed the convictions and discharged the defendants. That is what should have occurred in this case.

Applying the subjective entrapment defense as described by the majority to this case, it is undisputable that the first element of the test under Munoz, (whether an agent of the government induced the Defendant to commit the crime) was met in this case – an agent of the state induced Blanco to commit the crime at issue but only "after repeated refusals" on Blanco's part. For purposes of the second element of Munoz (whether the defendant was predisposed to commit the offense) the only possible proper proof the state could have provided is that of a "ready acquiescence in the commission of the crime." Jones v. State, 114 So. 3d 1123, 1126 (Fla. 1st DCA 2013). This is so because there was absolutely no evidence of the other potential areas of proof: "the defendant's prior criminal activities;" a "reputation for such activities;" or "reasonable suspicion of his involvement in such activity." Majority at 7. However, the majority has already conceded that Blanco agreed to participate in the drug transaction only "after repeated refusals," so there actually was no proof of "ready acquiescence" on his part.

The record is devoid of any proper evidence supporting any notion of predisposition on Blanco's part to commit the offense. To get around this problem, the majority concludes that "post-inducement evidence can be admissible if it tends

15

to show that the defendant was pre-disposed to commit the crime." Applying circular reasoning, the majority concludes that because Blanco was induced to commit the crime, he was necessarily predisposed to commit it. Such reasoning has been properly rejected. See Farley, 848 So. 2d at 398 where, citing federal precedent, the Court rejected the state's claim that the fact that the defendant participated in the crime indicated that he was predisposed to commit the crime.

In an attempt to bolster its circular reasoning, the majority creates a hypothetical which is completely inapplicable to the facts of this case. In the majority's hypothetical, a targeted person is recorded, post-inducement, making reference to fifty prior drug transactions. The majority also relies upon a case in which a video of prior criminal activity existed and, because of that, the appellate court found that the defendant was predisposed to commit the crime. It is obvious to any reader that proof of or discussion of prior criminal activity can, by itself, be evidence of predisposition. The problem is, those are not the facts in this case. Rather, in this case there was absolutely no evidence that Blanco had any prior criminal involvement of any sort.

To address that dearth of evidence, the majority somehow conflates a reference to a political discussion as proof that Blanco was "not one easily influenced" with the notion that post-inducement use of jargon is proof of predisposition. First, there is simply no precedent for the notion that holding

strong political opinions is somehow proof that one is predisposed to commit a crime, and such a concept should be easily discarded. More importantly, where there was absolutely no proof of any prior involvement in any sort of criminal activity, Blanco's use of jargon – which was undisputedly provided by the informant during the transaction at issue – simply does not satisfy the requirements of Munoz v State, 629 So. 2d 90 (Fla. 1993).

An analysis of the existing entrapment case law demonstrates this point. There are cases, like those cited by the majority, where the defendant claiming entrapment has a demonstrable history of criminal activity. Sallomi v. State, 629 So.2d 969 (Fla. 5th DCA 1993) (defendant therein made reference to prior criminal activity in the form of reference to his "supplier."); Jones v. State, 114 So. 2d 1123 (Fla. 1st DCA 2013) (defendant "had three prior felony convictions involving the sale of drugs."). Whatever post-inducement activity was at issue in those cases is really irrelevant in light of the already existing evidence of predisposition in each of the cases.

In contrast, other cases involve defendants – like Blanco – with no known prior criminal connection. In those cases, the courts have found entrapment as a matter of law and reversed the convictions – even on claims of ineffective assistance of counsel such as that here. For example, in Nadeau v. State, 683 So. 2d 504 (Fla. 4th DCA 1995) the defendant with no criminal record and no known

reputation for criminal behavior was "coached … in the parlance of the drug trade." Id. at 505. In reversing the conviction in that case based on an improper denial of a motion for acquittal, the Fourth District found that "the law enforcement conduct in this case was so outrageous as to constitute denial of appellant's due process rights." Id. at 506. The court there also found that Nadeau proved subjective entrapment as a matter of law. In Jimenez v. State, 993 So. 2d 553, 556 (Fla. 2d DCA 2008) a confidential informant induced the defendant to engage in a drug transaction by taking advantage of a pre-existing friendship. The court there reversed the conviction based on claims of ineffective assistance of counsel for failing to move to dismiss based on an entrapment defense, finding the allegations of entrapment unrefuted where the defendant claimed "he had no prior criminal history" and "no history whatsoever of engaging in drug distribution." Similarly in Madera v. State, 943 So. 2d 960 (Fla. 4th DCA 2006), "the defendant was thirty seven years old with absolutely no criminal history, unknown to law enforcement officers and gainfully employed in lawful activity at the time the confidential informant first approached him." The defendant there also "repeatedly told [the informant] that he did not use or sell illegal drugs." In language which is wholly applicable to the facts of this case, the court there found:

> "there would have been no crime without the CI's prodding and
> improper conduct. At the time the defendant was gainfully employed
> at a lawful occupation, and had no prior criminal activity, and was not

18

> even suspected of criminal activity. The CI was used here, not to detect crime, but to manufacture it."

Id. at 962.

Finding a due process violation, the court there reversed the conviction and found the defendant objectively entrapped. See also, Curry v. State, 876 So. 2d 29, 31 (Fla. 4th DCA 2004) (reversing a conviction where there was "no indication Curry was involved with any criminal undertaking prior to the involvement of law enforcement" and "it was only after an abundance of phone calls from the CI, and later the detective" that she acquiesced in committing the crime); Farley v. State, 848 So. 2d 393, 396 (Fla. 4th DCA 2003) (reversing conviction where prior to receiving spam email from the government, there was no indication that defendant was inclined to commit the offense, was thus not predisposed to commit the crime and where the state presented no evidence of past deviant behavior or criminal activity, entrapment was shown as a matter of law. Trial court should have granted defendant's motion to dismiss.)[6]; Dial v. State, 799 So. 2d 407, 409 (Fla. 4th DCA 2001) (finding appellant had no criminal record and there was no evidence she was suspected of criminal activity before supervisor repeatedly pressured her into criminal scheme); Robichaud v. State, 658 So. 2d 166, 168 (Fla. 2d DCA 1995)

---

[6] The Court there aptly quoted Jacobson v. United States, 503 U.S. 540, 553 (1992) for the rule which should be applied in this case: "when the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene."

(reversing trafficking conviction where CI induced appellant to participate in drug buy by appealing to his sympathy for a sick friend and threatening him that boys from the mafia would "take care of him" and where detective had no information that defendant was involved in drug dealing and had no prior drug offenses); State v. Anders, 596 So. 2d 463, 468 (Fla. 4th DCA 1992) (where informant had no reason to believe that Anders had ever engaged in drug trafficking, DEA rejected case against him in light of lack of criminal background, applying objective test to reverse conviction finding there was no "specific ongoing criminal activity by Anders prior to the informant's scheme."). See also, 22 CJS, Criminal Law §76 "Only those statements of the accused that indicate a state of mind untainted by the inducement are relevant to show predisposition. … The predisposition must be independent of the attention the government agent directed at the defendant. … Although no factor is controlling, the accused's reluctance to engage in criminal activity is the most important." (emphasis added) 16 Fla. Jur. 2d Crim. Law §141 "'Predisposition' is not present when one has no prior criminal history related to the offense at issue."

Finally, the majority somehow seems convinced that because the jury reached a guilty verdict in the face of a claim of entrapment, that this Court may not conclude otherwise. The list of just-cited cases is proof that such a conclusion is incorrect. It is one of the functions of this Court to undo injustice when the law

20

has been improperly applied. To quote the majority, this is one of those cases. As stated in Cruz v. State, 465 So. 2d 516, 520 (Fla.), cert. denied, 473 U.S. 905 (1985): "The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention." quoting Sorrels v. United States, 287 U.S. 435, 457 (1932) (Roberts, J. in a separate opinion).

It is undisputable that under the proper application of the principles and tests of Munoz, Blanco was entrapped by a former lover to engage in a single criminal activity. Blanco was entrapped as a matter of law and the conviction should be overturned. His trial counsel should have moved for judgment of acquittal and the trial court should have granted that motion. For the reasons given above, I would reverse the conviction.